Pedro R. FAGOT, Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, Hoyle L. Robinson, Executive Secretary; John Doe, Richard Roe, et al., Defendants.

Civ. No. 81–2098CC.

United States District Court, D. Puerto Rico.

April 16, 1984.

Felícita C. Jomp, Old San Juan, P.R., for plaintiff.

Daniel F. López-Romo, U.S. Atty. by Francisco A. Besosa, Asst. U.S. Atty., Hato Rey, P.R., for defendants.

## OPINION AND ORDER

CEREZO, District Judge.

This is an action brought under the Freedom of Information Act, 5 U.S.C. 552 (FOIA), the Privacy Act, 5 U.S.C. 552a, the Administrative Procedure Act, 5 U.S.C. 701, 702 (APA), the First, Fourth, Fifth and Ninth Amendments of the Constitution of the United States and Sections Eight and Ten of Article II of the Constitution of the Commonwealth of Puerto Rico. It is essentially aimed at obtaining disclosure of certain memoranda and reports prepared by officers of defendant Federal Deposit Insurance Corporation (FDIC) concerning Mr. Fagot's work as a lawyer for a federally insured bank. Additionally there is an assortment of claims of privacy rights allegedly violated, appended to the disclosure claims, which are loosely attached to general principles and bent on the abstract. These coarse claims and those which can be

liberally construed to state a FOIA-Privacy Act claim are indiscriminately directed at the FDIC, at Mr. Hoyle Robinson in his capacity as executive secretary of that corporation and at two, yet to be identified, unknown defendants, as custodian of records. The defendants have filed motions to dismiss and for summary judgment which, due to plaintiff's variegated pleadings, cover a spectrum of matters ranging from disclosure to sovereign immunity. Their opposition requires that plaintiff's general claims be assessed closer to the facts which, construed in the light most favorable to him, see e.g.: *Packish v. McMurtrie*, 697 F.2d 23, 27 (1st Cir.1983), we find as follows:

Pedro R. Fagot was director and legal counsel of a federally insured bank. On or about June 1979, he resigned apparently because of differences with bank president Eliseo Font who happens to be his cousin. Upon resigning, he requested a list of all matters then pending related to his work as attorney for the bank. This list supposedly also revealed deficiencies and irregularities in bank procedures. On October 1979 Mr. Fagot approached Thomas Conway, an FDIC examining officer, and expressed his concern over those irregularities. Conway indicated that such matters had to do with internal procedures and referred him to an auditor who concluded that the irregularities were already known to the FDIC.

On January 1980, plaintiff met with FDIC examiners Conway and Sargood and delivered another list he had prepared indicating that there were seventeen (17) documents which were classified as pending in the list originally given him upon resigning as to which he already had receipts from the bank. He allegedly told the examiners that this list was confidential. On March 1980, certain bank officers told Mr. Fagot that the FDIC was complaining of his confidential visits. They also threatened to disclose the contents of private conversations, recorded without his consent, to the Supreme Court of Puerto Rico and the Bar

Association Ethics Committee. Thereafter, plaintiff continued to approach FDIC examiners, sometimes at the bank while they conducted investigations and other times in public places. He was dismayed upon learning that the list he had prepared showing the receipts had been given to the bank's directors. Perplexed at the FDIC's apparent lack of concern over the irregularities and illegal activities by bank officers and directors that he had denounced, he filed a complaint in the Superior Court of Puerto Rico, Mayagüez Part, against the bank and the directors who allegedly harassed him,[1] but did not include the FDIC or its examiners. Plaintiff was disturbed because the FDIC examiners he had approached were to be called as witnesses for the defendants in that case. On July 1981 he requested from the FDIC San Juan Field Office copies of memoranda prepared by the examiners he met with discussing their meetings. This request was partially granted. FDIC considered that the documents were exempt from disclosure under the FOIA and not part of a system of records as defined by the Privacy Act, yet chose to voluntarily disclose portions of them. Those portions describe Mr. Fagot's approaches to FDIC examiners regarding his concern over the alleged irregularities and the steps they took to look into the matter. An administrative appeal was unsuccessful and this action ensued. No attempt was made to correct or to amend the portion of the documents that was revealed, as provided by 5 U.S.C. 552a(d)(2), (3), nor to pursue other types of administrative claims regarding this matter.

Other than repeating the arguments raised in the administrative proceeding in support of disclosure of deleted portions, the complaint also charges that FDIC examiners disclosed the confidential list plaintiff had submitted and informed the bank of his meetings with FDIC. It is contended that such disclosure as well as the mere existence of the information on Mr. Fagot may affect his future chances of employment with FDIC regulated institutions or

---

1. *Fagot v. Font,* Civil 80–900.

with the federal government. He states that the Privacy Act affords him the means to correct any inaccuracies in the record which could affect him in the future. Plaintiff also charges some sort of conspiracy between FDIC examiners and the bank officers in failing to act despite being constantly notified of bank irregularities and officers' illegal activities. This conspiracy theory, it is urged, is buttressed by the fact that FDIC officers were willing to testify against him in his Superior Court action against the bank directors. Injunctive and declaratory relief is sought disclosing all contents of the documents and enabling plaintiff to correct them according to his version of the facts, plus $100,000 in damages and attorney's fees.

This blend of pleadings is based on 5 U.S.C. 552, 552a(d), (e) and (g), some type of tort claim for invasion of privacy and injury to reputation and a *Bivens* action for violation of the constitutional right to privacy. Defendants' first challenge is addressed to the claims for access to information on the ground that the material is exempt from disclosure according to FOIA exemptions, 552(b)(2), (b)(4), (b)(5), (b)(6) and (b)(8). They also challenge the applicability of the Privacy Act claiming that these records are not part of a "system of records" retrievable by reference to plaintiff's name, as required by that statute. The tort claims are attacked on various jurisdictional grounds. It is urged that Hoyle Robinson has not been correctly served and that the delay should be ground for dismissal for lack of prosecution. They also contend that these claims are really actions against the United States under the Federal Tort Claims Act, 28 U.S.C. 2671 *et seq.* (FTCA), which require prior exhaustion of administrative remedies. The final argument raised is that the Administrative Procedure Act cannot be invoked as an independent source of jurisdiction and that, absent a valid FOIA-Privacy claim, there is no jurisdiction.

Defendants have submitted the deleted portions and documents withheld for the court's in-camera inspection and supplied a *Vaughn* index to plaintiff. *See: Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973) *cert. denied* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). They allege that there are no issues of fact and that a determination can be made on the record without need of trial. Plaintiff has raised multiple issues of fact which he claims require trial, such as: whether FDIC examiners revealed confidential information about him to third parties; whether the deleted and undisclosed documents were properly withheld; whether FDIC examiners conspired with bank officers; whether the contents of the records are accurate and timely and whether defendants' refusal to answer interrogatories is proper.

■ After carefully examining the record and the documents submitted for in-camera inspection, we conclude that there are no genuine controversies on material facts which would preclude a ruling on the merits at this stage. Most of the matters which plaintiff has set forth as issues of fact are questions of law which can be adequately resolved on the record before us. The remainder are facts which have not been properly controverted, are based on speculation not related to material facts, as required by Rule 56 Fed.R.Civ.P. *See: Emery v. Merrimack Valley Woods Products, Inc.,* 701 F.2d 985 (1st Cir.1983) and *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975) *cert. denied* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). For instance, the scenario of a conspiracy of silence and inaction by FDIC consists of innuendos hurled in a void. The references to inaction by FDIC examiners despite plaintiff's complaints of bank irregularities and illegal activities, the participation of some of them in social activities hosted by the bank and their willingness to testify for the bank in the Commonwealth suit do not make a conspiracy. Absent the innuendo of conspiratorial silence by the FDIC, the wiretapping, eavesdropping and blackmail are all said to have been done by bank officers, not FDIC. Plaintiff must do more than rely on these "gossamer threads of whimsy, speculation and conjecture." *Emery v. Merrimack Valley Wood Products,*

*Inc.*, 701 F.2d 985, 992 (1st Cir.1983), to enable the court to, at least, consider the feasibility of a conspiracy claim.

 We turn now to plaintiff's remaining claims, starting with the core claim for information, to determine whether, as a matter of law, they withstand the thrust of defendants' challenge. The access to information request falls under both the FOIA and the Privacy Act. In this type of combined claim, a petitioner is entitled to the cumulative result of what both statutes provide. *Clarkson v. Internal Revenue Service*, 678 F.2d 1368, 1376 (11th Cir. 1982). We must determine then whether the requested information may be disclosed under either one. In assessing the FOIA claim, we find that the information sought may fall under various exceptions to disclosure. Section 552(b)(8) exempts from disclosure all information "contained in or related to examination, operating or condition reports prepared by ... an agency responsible for the regulation or supervision of financial institutions...." *Id.* In *Consumers Union of U.S., Inc. v. Heimann*, 589 F.2d 531 (D.C.Cir.1978), the court, although recognizing the doctrine that FOIA exemptions must be narrowly construed, denied access to information concerning a report made by the Comptroller of the Currency on noncompliance by national banks with provisions of The Truth in Lending Act because it considered that it fell within FOIA exemption 8. In *Consumers Union* plaintiffs recognized that the purpose of exemption 8 is to protect materials of the type here in question, *i.e.* related to a bank investigation, but argued that the information gathered by the Comptroller under the consumer protective statute did not concern itself with confidential matters of bank solvency and security which exemption 8 was especially designed to protect. In rejecting this argument, the court said:

It is true as appellant argues, that the primary reason for adoption of exemption 8 was to ensure the security of financial institutions. Specifically, there was concern that disclosure of examination, operation, and condition reports containing frank evaluations of the investigated banks might undermine public confidence and cause unwarranted runs on banks. However, there is nothing in the legislative history to indicate that Congress, in seeking to guard against these possibilities, intended exemption 8 to apply only to the varieties of bank examinations then extant, for, in our view, the disclosure of bank examination reports of any type, including those under scrutiny here, could lead to the same adverse results. Furthermore, a secondary purpose in enacting exemption 8 appears to have been to safeguard the relationship between the banks and their supervising agencies. If details of the bank examinations were made freely available to the public and to banking competitors, there was concern that banks would cooperate less than fully with federal authorities. That secondary purpose would certainly be implicated by appellant's interpretation of exemption 8. (Footnotes omitted.) *Consumers Union* at 534.

In our case the information sought under FOIA is part of a report prepared by FDIC on the results of an examination of a banking institution entrusted to its supervision and the memoranda showing the action taken by FDIC in investigating plaintiff's claims of irregularities in the bank's procedures. These documents contain sensitive information on the bank of the type exemption 8 was primarily designed to protect. *Id.* Likewise, as defendants correctly point out, revelation of that information may also thwart the secondary purpose of exemption 8: to provide banks and financial institutions supervised by the federal government sufficient assurance of confidentiality to promote full cooperation with the regulatory agencies. *See: Consumers Union* at 534. The material requested may also be exempt under other provisions of the Act such as 552(b)(6) for it contains information concerning other individuals, the disclosure of which may be considered to "constitute a clearly unwarranted invasion of privacy," *see: New England Apple Council v. R. Donovan*, 725 F.2d 139 (1st Cir.1984), or 552(b)(5) for the deleted information is part

of inter-agency memoranda possibly protected by executive privilege. However, in view of our ruling that these materials are exempt under Section 552(b)(8) there is no need to consider the applicability of other exemptions.

However, when considering the request as one under the Privacy Act it is important to note that it expressly forbids reliance on any FOIA exemption to deny disclosure that may otherwise be available under it. 5 U.S.C. Sec. 552a(q). This prohibition responds to the different objectives of each statute. The Privacy Act limits government use of information about an individual while FOIA provides the public with increased access to a wide array of government held information. See 3, B.J. Mezines, J.A. Stein and J. Gruff, *Administrative Law*, Sec. 12.10(1) (1983). Consideration of FOIA exemptions to the request under the Privacy Act is unnecessary for they are inapplicable to this type of informational claim. However, a determination of whether the information sought is accessible to Mr. Fagot under the Privacy Act does not depend on the applicability of a statutory exception to disclosure but on the applicability of the Act itself. If the Privacy Act does not apply then the request for information rests solely on FOIA, and its exemptions come into play.

 The subsection of the Privacy Act which provides the right to gain access to records and to request amendments refers to agencies that keep a "system of records." 5 U.S.C. Sec. 552a(d). System of records is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual...." Sec. 552a(a)(5). Courts have construed this requirement as essential to the enforceability of the Act and have consistently denied

access to information which may contain matters related to an individual but which is not filed in a system of records, as defined by the Act. *See: Boyd v. Secretary of the Navy*, 709 F.2d 684, 686 (11th Cir.1983) *cert. denied* —— U.S. ——, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984); *Hanley v. United States Dept. of Justice*, 623 F.2d 1138 (6th Cir.1980); *Grachow v. United States Customs Serv.*, 504 F.Supp. 632, 634–36 (D.D.C.1980); *Savarese v. United States Dept. of Health, Education and Welfare*, 479 F.Supp. 304, 307–09 (N.D.Ga. 1979), *aff'd.*, 620 F.2d 298 (5th Cir.1980), *cert. denied*, 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1980); *Smiertka v. United States Dept. of Treasury*, 447 F.Supp. 221, 228 (D.D.C.1978), *remanded on other grounds*, 604 F.2d 698 (D.C.Cir.1979). In *Boyd v. Secretary of the Navy*, the court emphasized the guidelines for the application of the Privacy Act issued by the Office of Management and Budget which provide that only information maintained in a system keyed to the requester's own name or other personal identifier be disclosed. *Id.* at 686. *See also: Administrative Law*, *supra* at Sec. 12:01, pp. 12–14, 12–22 and 12–23. This responds to practical considerations for the burden imposed on agencies in having to rummage through tons of papers identified by all sorts of subject matters in order to locate information related to a requester can reach unsurmountable and possibly absurd proportions. *See: Smiertka*, 447 F.Supp. at 226 N. 37 and *Savarese*, 479 F.Supp. at 308. There will be many records that are cued to a certain subject matter, i.e. a bank, which will undoubtedly contain references to individuals. However, the fact that information regarding an individual contained in a file not identified by that person's name can somehow be retrieved does not make the record(s) part of a "system of records." As commented by Judge Sirica in *Smiertka v. United States Dept. of Treasury:* [2]

---

**2.** The Court of Appeals remanded the case to consider intervening events that were not brought to the lower court's attention. The Court, however, did not question or otherwise disagree with the district court's discussion of

the "system of records" requirement. In fact, it appears to have agreed with the weight given by Judge Sirica to this requisite for it remanded to determine first if the new system by which the information sought was being filed consisted of

Only if information about individuals is maintained in groups of records keyed to the requester are agencies required to afford access. This means that even if information pertaining to the requester appears in a system of records, it need not be disclosed unless the information is retrievable by means of the requester's own name or other personal identifier. That it can be easily retrieved in some other way by some other identifier is wholly beside the point.

This interpretation of the access provision basically tracks the relevant administrative regulations implementing the Privacy Act. As the regulations make plain, "The 'are retrieved by' criterion implies that the grouping of records under the control of an agency is accessed by the agency by use of a personal identifier; not merely that a capability or potential for retrieval exists." By way of example, "an agency record-keeping system on firms it regulates may contain 'records' (i.e., personal information) about officers of the firm incident to evaluating the firm's performance. Even though these are clearly 'records under the control of' an agency, they would not be considered part of a system as defined by the Act, unless the agency accessed them by reference to a personal identifier (name, etc.) That is, if these hypothetical records are never retrieved except by reference to the company identifier or some other nonpersonal indexing scheme (e.g., type of firm) they are not a part of a system of records. (Footnotes omitted.) *Id.* at 228–29.

The only exception to this interpretation of the "system of records" requirement refers to violations of 5 U.S.C. Sec. 552a(e)(7) which prohibit agencies from collecting records that describe how an individual exercises his First Amendment Rights, *see: Clarkson v. Internal Revenue Service,* 678 F.2d 1368, 1376–77 (11th Cir.1982); a situation which is not present in this case. The truth of the matter is that here the information was retrieved from a file bearing the bank's name. It was found by rummaging through this file and connecting the dates and the FDIC examiners' names given by plaintiff in his request. The decision to search in the file of that particular bank was the result of the local examiner's personal recollection of plaintiff's involvement with the bank as director and attorney. There is no indication nor are we referred to any instance in the record evincing, at least prima facie, that this information was retrieved from a system of records keyed to plaintiff's name or other personal identifier or that the information consists of the records contemplated by 552a(e)(7). Absent such showing by plaintiff, the claim for disclosure under the Privacy Act cannot withstand the summary judgment motion.

■ The other part of plaintiff's Privacy Act claim having to do with illegal disclosure of records and failure to maintain accurate information rests on several poorly developed premises which clearly do not establish entitlement to the Act's remedies. The Privacy Act provides that in order to avail oneself of the civil remedies afforded by it, the lack of compliance with the Act must result in some adversity to the claimant, 5 U.S.C. 552a(g)(1)(C) & (D), *see: Usher v. Secretary of Health and Human Services,* 721 F.2d 854 (1st Cir.1983) and *Harper v. United States,* 423 F.Supp. 192, 197 (D.S.C.1976) and there must be a causal relationship between the adversity and the agency's violation of the Act. *See: Edison v. Department of the Army,* 672 F.2d 840, 845 (11th Cir.1982). The disclosure complained of must be of the type sanctioned by the Act: information contained in a record filed within a system of records. 5 U.S.C. Sec. 552a(b). Some courts have held that if the material revealed to third parties consists of documents not a part of records filed within a system of records, *see: Johnson v. United States Dept. of Air Force,* 526 F.Supp. 679, 681 (W.D.Okl.1980) *aff'd.*

a "system of records" retrievable by reference to the requester's name. The court indicated: "the conditions under which an agency retains and

retrieves information are a crucial determinant of the scope of the access requirement of the Privacy Act." *Smiertka,* 604 2d at 704.

*Smith v. United States Dept. of Air Force,* 703 F.2d 583 (Ct.Cl.1982), or if the information revealed comes from an independent source, *see: Thomas v. United States Dept. of Energy,* 719 F.2d 342, 345 (10th Cir.1983); *Doyle v. Behan,* 670 F.2d 535, 539 (5th Cir.1982); *Olberding v. U.S. Dept. of Def., Dept. of the Army,* 564 F.Supp. 907, 913 (S.D.Iowa 1982) *aff'd.* 709 F.2d 621 (8th Cir.1983); *Jackson v. Veterans Administration,* 503 F.Supp. 653 (D.C.Ill. 1980) there is no violation of the Act's disclosure limitations. Others have held that if the material revealed consists of the opinion of an agency employee on the recorded subject matter, *see: Federal Deposit Ins. Corp. v. Dye,* 642 F.2d 833, 836 N. 5 (5th Cir.1981); *King v. Califano,* 471 F.Supp. 180, 181 (D.D.C.1979) or if the information revealed was previously known to the parties or should have been known to them because of its public nature *see: Dye,* at 836; *Ash v. United States,* 608 F.2d 178, 179 (5th Cir.1979) *cert. denied* 445 U.S. 965, 100 S.Ct. 1655, 64 L.Ed.2d 241 (1980), then again disclosure does not violate the Act. On the claim for accurate records, we note that, besides the adversity requirement previously mentioned, it has been held that the remedies provided by the Act for correction of allegedly inaccurate record keeping apply only to errors of fact and not of judgment. *See: Blevins v. Plummer,* 613 F.2d 767, 768 (9th Cir.1980). It must also be remembered that the Act's requirement of accurate record keeping is measured by a standard of reasonableness in the steps taken by the agency to make an accurate rendition of the facts and not by the degree to which they may eventually be proven to correspond with the truth. *See:* 5 U.S.C. Sec. 552a(e)(5), (6) and *Edison v. Department of the Army,* 672 F.2d 840, 842–43 (11th Cir.1982).

■ From plaintiff's conclusory allegations, we surmise that his claim of illegal disclosure refers to the revelation of the list he prepared and submitted to FDIC examiners allegedly on a confidential basis which showed that he had receipts from the bank for some documents that it had classified as pending and the examiners' comments on his approach to the agency. These references, aside from being vague and almost devoid of factual content, deal with disclosure of material which has not been shown to have been part of a system of records, as defined by the Act. There is no indication that this "confidential" list was ever part of some FDIC record or that it contained information not previously known to the bank. In fact, the alleged contents of the list implies previous knowledge by the bank. For that matter, there is nothing in the record which would establish that the FDIC examiners' opinionated comments concerning their meetings with plaintiff made reference to the contents of any matter filed within a system of records or that those comments referred to matters which the bank officers did not already know of given the nature of the meetings and plaintiff's approaches to FDIC examiners in public places and at the bank itself. The fatal flaw, however, in the accuracy and disclosure aspect of his Privacy Act claim is that no concrete, adverse determination based on those records has even been taken. Plaintiff's vague reference to possible future trouble in obtaining employment is not only sheer speculation on events that have not occurred but rests on the erroneous assumption that the brief information concerning him will be accessible through the use of his name or other personal identifier, without having to make the cross-reference to the bank's name. Since plaintiff has failed to show that the adversity requirement was met, the plain language of the statute, *see: United States v. Clarke,* 445 U.S. 253, 254, 100 S.Ct. 1127, 1128, 63 L.Ed.2d 373 (1980) prevents him from resorting to the remedies of damages and correction of records and renders the Act inapplicable to his privacy related claims. We must examine then the remaining claims to determine if they find their source in some other law.

■ The claim of invasion of privacy by the FDIC, construed in the most liberal manner, presents the situation of a tort action against the United States. *Cf.: Black v. Sheraton Corp. of America,* 564

F.2d 531 (D.C.Cir.1977) (invasion of privacy claim based on illegal eavesdropping by F.B.I. agents of a Washington lobbyist held to be actionable against the U.S. Government under the F.T.C.A.) The Federal Tort Claim Act, 28 U.S.C. 2671 *et seq.* (F.T.C.A.), is a statutory waiver of the United States' sovereign immunity for certain tortious conduct. *United States v. Kubrick,* 444 U.S. 111, 117–118, 100 S.Ct. 352, 356–357, 62 L.Ed.2d 259 (1979). The terms of the waiver must be delineated according to the commands of the statute. *Id.* It requires exhaustion of administrative remedies before resort to the courts, 28 U.S.C. 2675; a requirement which has been construed as jurisdictional. *McWhirter Distributing Co., Inc. v. Texaco, Inc.,* 668 F.2d 511, 527 (Emer.Ct.App.1981). The administrative claim must give the agency sufficient notice of the tortious conduct charged to enable it to investigate and must place a value on the injury. *See: Adams v. United States,* 615 F.2d 284, 286 (5th Cir.1980) *clarified* 622 F.2d 197. The purpose of notice is to avoid unnecessary litigation and costs to both parties by giving the agency the initial opportunity to examine the feasibility of the claim and the possibility of settlement. *See: id.* and *Douglas v. United States,* 658 F.2d 445, 447 (6th Cir.1981). The F.T.C.A. also mandates that all actions in tort against federal agencies be channeled through it and these are deemed to be actions against the United States, regardless of the agency's capacity to be sued in its own name. *See:* 28 U.S.C. 2679(a). The proper party to be sued in an F.T.C.A. action is the United States and not the federal agency or officers that allegedly committed the tortious acts charged. *See: Armor Elevator Co. v. Phoenix Urban Corp.,* 655 F.2d 19, 22 (1st Cir.1981).

■ This action was not filed against the United States. Although this could ordinarily be cured by amendment, plaintiff's admission that the tort claim was not presented to the agency and his failure to comply with the burden of showing why the statutory jurisdictional requirement was not followed, *see: Kielwien v. United States,* 540 F.2d 676, 680 (4th Cir.1976)

*cert. denied* 429 U.S. 979, 97 S.Ct. 491, 50 L.Ed.2d 588, makes joinder a futile endeavor. The contention that an administrative claim was not filed because of subsequent events which allegedly took place after these proceedings had been filed (events which are never specified) cannot serve as grounds to abrogate the exhaustion requirement. This is not the situation covered by 28 U.S.C. Sec. 2675(b) in which the amount claimed in the administrative proceeding, limited by the F.T.C.A. as the maximum to be claimed in the judicial action, may be increased by the court if newly discovered evidence or intervening facts justify it. Additional claims not included in the administrative proceedings and events not presented originally to the agency cannot be filtered into the court action by subsequent amendments to the complaint. *See: Provancial v. United States,* 454 F.2d 72, 74–75 (8th Cir.1972). Plaintiff's letters to the F.D.I.C. had to do solely with his disclosure request under FOIA and the Privacy Act. He made no reference to the possibility of suing the agency for tortious invasion of privacy. In addition, Mr. Fagot does not state which subsequent event or events involving tortious conduct by the FDIC occurred after he approached the agency. By his own admission, all the facts alleged, i.e.: bank examiners' comments, the list, witnesses for the bank, were all known to him at the time he made his administrative FOIA–Privacy Act claim. On these facts, the filing of this action circumvents the statutory limitation and creates a special waiver of sovereign immunity not contemplated by the F.T.C.A. All claims for damages based on tortious conduct by the FDIC and its employees which should have been brought against the United States are, therefore, dismissed for lack of jurisdiction.

■ An additional source in support of plaintiff's claimed privacy rights is said to be found in the constitutional right to privacy as recognized by the Supreme Court in several cases. *See e.g.: Roe v. Wade,* 410 U.S. 113, 152–56, 93 S.Ct. 705, 726–728, 35 L.Ed.2d 147 (1973). The channeling of

the claims on these grounds, however, meet head on with the sovereign immunity barrier, even assuming that this constitutional right protects the interest in question here, *see: Roe v. Wade* at 152, 93 S.Ct. at 726; *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) or that plaintiff had a "legitimate expectation of privacy" in his meetings with the FDIC, *see: United States v. Miller*, 425 U.S. 435, 443, 96 S.Ct. 1619, 1624, 48 L.Ed.2d 71 (1976). Generally, courts have allowed suits for damages due to violations of certain constitutional rights only if the action is brought against the federal officers who engaged in unconstitutional conduct. *See e.g.: Butz v. Economou*, 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978). These suits, commonly known as *Bivens* actions since their origin is found in *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), cannot be brought directly against the United States, its agencies or its officers acting in an official capacity only for they would be barred by the sovereign's immunity. *See: Holloman v. Watt*, 708 F.2d 1399, 1402 (9th Cir.1983); *Sánchez-Mariani v. Ellingwood*, 691 F.2d 592, 596 (1st Cir.1983). The pleadings here show that the complaint is directed at the FDIC in its capacity as a public agency and against the federal officers solely in their official capacity. There is no indication whether defendants, sued only in their official capacities, were involved in any manner with any of the acts complained of which could arguably be construed as an unconstitutional invasion of privacy. By plaintiff's own statements, the persons who were allegedly involved in these acts were the FDIC examiners and they are not included in the complaint or in any of its amended versions.[3]

The last wedge where plaintiff tries to insert his claims lies in review of agency action. Sections 701 and 702 of the Administrative Procedure Act are invoked to obtain declaratory judgment and injunctive relief ordering FDIC to release the information on him, permit him to amend and correct it, declare that the documents have been improperly withheld and prohibit FDIC from making any future disclosures. Undoubtedly, section 702 provides judicial review of "agency action" which causes "legal wrong."[4] It also provides that an action

> [S]eeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. Section 702.

However, there are various statutory and constitutional requirements that must be met before the non-monetary relief provided by this section is available. The review must be of an agency action which, as defined by 5 U.S.C. Section 551(13),[5] "includes the whole or part of an agency rule, order license, sanction relief, or the equivalent or denial thereof or failure to act...." Not every action taken by a federal employee consists of an "agency action" reviewable by the court through section 702. *See: International Eng. Co., Div. of A-T-O, Inc. v. Richardson*, 512 F.2d 573, 580 (D.C.Cir.1975) *cert. denied* 423 U.S. 1048, 96 S.Ct. 774, 46 L.Ed.2d 636; *Pharmaceutical Manufacturers Ass'n. v. Kennedy*,

---

**3.** We need not consider defendants' arguments on service of process or whether a *Bivens* action can be extended to include the type of constitutional infringement here asserted given the specific remedies and procedures afforded by the FOIA and the Privacy Act, *see: Bivens* 403 U.S. at 397, 91 S.Ct. at 2005, and *Carlson v. Green*, 446 U.S. 14, 19, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1979), for plaintiff has failed to plead liability in the manner required by a *Bivens* suit.

**4.** Section 702 provides in part: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

**5.** 5 U.S.C. Section 701(b)(2) provides that the phrase "agency action" as used within the Administrative Procedure Act shall have the meaning given to it by 5 U.S.C. Section 551.

471 F.Supp. 1224, 1226–1233 (D.Md.1979). The agency action must be final, that is, exhaustion of administrative remedies is required, *see: Burlington Northern v. Chicago, etc.*, 649 F.2d 556, 558–59 (8th Cir.1981), must result in some "legal wrong" or "invasion of a legally protected right," *Pennsylvania R.R. v. Dillon*, 335 F.2d 292, 294 (D.C.Cir.) *cert. denied*, 379 U.S. 945, 85 S.Ct. 437, 13 L.Ed.2d 543 (1964), and the action complained of and sought to be reviewed cannot be one committed to agency discretion by law. 5 U.S.C. Section 701(a)(2).[6] The requirement of "legal wrong" of the Administrative Procedure Act's section 702 and the "actual controversy" element of the Declaratory Judgment Act[7] echo the jurisdictional requirement of Article III of the Constitution that there be a live controversy appropriate for judicial resolution. *See e.g.: Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–464, 81 L.Ed. 617 (1937). Although the declaratory remedy may depend on less demanding standards than the irreparable injury showing of injunctive relief, *see: Diaz v. Stathis*, 576 F.2d 9, 11 (1st Cir. 1978), it does demand as a jurisdictional prerogative that plaintiff demonstrate the existence of "a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Societe de Conditionnement v. Hunter Engineering*, 655 F.2d 938, 942 (9th Cir.1981) *citing: Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941). In *Aetna Life and Ins. Co. v. Haworth* 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937), the meaning of the "controversy" requirement for declaratory judgment was thus explained:

> A 'controversy' in this sense must be one that is appropriate for judicial determination.... A justiciable controversy is thus distinguished from a difference or

dispute of a hypothetical or abstract character; from one that is academic or moot.

> ... The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests.... It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.... Where there is such a concrete case admitting of an immediate and definite determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages.

*Id.* at 240–41, 57 S.Ct. at 463–464. The alleged controversy cannot be based upon the possibility of a factual situation that may never develop. *Hendrix v. Poonai*, 662 F.2d 719, 721–22 (11th Cir.1981); *Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc.*, 439 F.2d 871–873 (1st Cir. 1971). The court has discretion to decline jurisdiction even if the "actual controversy" requirement is met in the declaratory action. *See: International Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1217–18 (7th Cir.1980). Such discretion is exercised taking into account factors such as utility of the declaration, public interest (judicial expediency), need for the requested relief and actual harm to the plaintiff. *Id.* at 1218; *see also: Allied-General Nuclear Services v. Com. Edison Co.*, 675 F.2d 610, 611 (4th Cir.1982).

Although plaintiff has not specified which agency action caused him harm for which he needs declaratory and injunctive relief, an examination of the record reveals two possibilities: the conduct of the FDIC examiners, non parties, in approaching

---

**6.** Section 701 provides in part: "This chapter (APA) applies, according to the provisions thereof, except to the extent that—

(1) ....

(2) agency action is committed to agency discretion by law."

**7.** 28 U.S.C. Section 2201 provides in part: "In a case of actual controversy...."

bank officers and disclosing matters discussed in their meetings with plaintiff, and, the list he had prepared and FDIC's partial denial of his request for disclosure. The injury allegedly caused by this agency action is based on the possibility that the information regarding plaintiff contained in FDIC files may someday be used to curtail his opportunities as director for another bank or to obtain employment in a federal agency. Plaintiff believes that correction of information about him through an explanatory comment on his version of the facts will prevent any possible future injury to his career opportunities. As stated before, the legal interest which this future injury will affect is not found in the FOIA or the Privacy Act for plaintiff has not stated a claim under these statutes. However, even assuming that this potential future harm found some legally protected right as its basis and that the acts complained of were agency action within the meaning of APA, his injury claims lack the necessary immediacy and concreteness to give rise to a controversy appropriate for judicial adjudication. The damage claims are nothing more than speculation based on a hypothetical chain of events. There is no evidence whatsoever that FDIC has taken part in the wrongdoing *anticipated* by plaintiff of volunteering negative and erroneous data on him to banks and government agencies in an attempt to cripple future employment opportunities. Aside from a reference to the fact that he was bank director at an early age, there is no indication on the record that he has, in fact, applied for any of these positions or that applications have been denied without explanation. If we consider also that the information on Mr. Fagot's complaints about bank "irregularities" in the FDIC's bank file cannot be retrieved by using his name or other personal identifiers, the hypothetical nature of his damage claim becomes even more patent.

 The other instance of claimed injury stated in the declaratory action stems from approaches by FDIC examiners to bank officers after their meetings with Mr. Fagot. Since this conduct did not violate the Privacy Act, its illegality, if any, must flow from some other source. Yet, assuming illegality, the remedy would lie elsewhere in other actions previously discussed had they been filed correctly, i.e.: exhaustion complied with, proper parties brought to action. A declaration on these past events would serve no useful purpose and would ignore the exhaustion requirement, rule on rights of individuals not parties to this action and render a judgment that would fragment the litigation.

In sum, the circumstances of this case caution against awarding the discretionary remedies sought. Plaintiff's efforts to show the need for these remedies and to establish actual harm have been fruitless because they have invariably rested on conjecture. The disturbing effects of granting remedies in a vacuum could be felt not only on future litigation which may require adverse determinations but also on the pending state action. We would be indulging in advisory opinions on controversies and events yet to pass. Our role is to adjudicate, not create, controversies.

Accordingly, defendants' Motion to Dismiss and Motion for Summary Judgment are hereby GRANTED and the complaint is DISMISSED. The pending state law claim is also DISMISSED since there exists no principal federal action to justify its consideration. *See e.g.: United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Judgment shall be entered accordingly.

SO ORDERED.