**Charles ERTELL, Plaintiff,**

v.

**The DEPARTMENT OF the ARMY, Defendant.**

No. 83–4065.

United States District Court, C.D. Illinois, Rock Island Division.

Jan. 7, 1986.

Kary Love, Moline, Ill., for plaintiff.

L. Lee Smith, Asst. U.S. Atty., Peoria, Ill., for defendant.

## ORDER

MIHM, District Judge.

Plaintiff, Charles Ertell, is a former employee of the Department of the Army, currently receiving disability retirement benefits. He is seeking re-employment with the Army and, as an employee on disability and a ten point veteran, is entitled to preference. Mr. Ertell has had an application on file with the Department of the Army since July of 1977.

According to the allegations of the complaint, several jobs have been available between July of 1977 and the present time for which Mr. Ertell is qualified. He has been offered none of them and he blames three documents in his file for this failure to be re-employed. The first is a "Memorandum for Record" dated March 12, 1976, authored by Arnold Kublin; second, an appraisal of past performance, also by Mr. Kublin; and third, an appraisal by Nora Hughes.

This Court, by order dated January 22, 1985, dismissed two counts of Plaintiff's three count complaint, leaving only the Privacy Act claims intact. In that portion of his complaint, Plaintiff has alleged numerous violations of the Privacy Act ranging through inclusion of the documents in his files; failure to maintain his record in an accurate, relevant, timely, and complete fashion; failure to protect the integrity of the documents; failure to notify Plaintiff of the existence of the controverted documents; and failure to correct the erroneous records as required by the Privacy Act and requested by the Plaintiff.

Pending before the Court at the time of the hearing were Plaintiff's motion to amend and Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The motion to amend was granted by the Court at the hearing on November 14, 1985, over the objection of Defendant. The amended complaint has since been answered and the Court feels no need to address it further in this Order. Therefore, the only motion which will be considered herein is that of the Defendant for summary judgment.

*Position of the Defendant*

The Army argues, in support of its motion, that summary judgment is warranted on three grounds: (1) failure to exhaust administrative remedies, (2) expiration of the statute of limitations, and (3) a claim that appraisals of performance are opinion rather than fact and are, therefore, exempt from the statute.

Defendant contends that the claim for non-monetary relief is barred by Plaintiff's failure to exhaust his administrative remedies. The Department suggests that the Court erred in its order of January 22, 1985 in finding that Plaintiff had alleged the filing of a Privacy Act Notice on July 2, 1982 or that he had requested information. Absent proper findings to that effect, Defendant maintains that Plaintiff cannot show sufficient exhaustion to give the Court jurisdiction for his non-monetary relief. Defendant claims that Plaintiff has never sought to have the records amended and further claims that there is nothing in the record to indicate that he ever requested information as to the existence of negative records to which request Defendant failed to respond.

Defendant points out that there is a reviewing procedure, set out at 32 C.F.R. § 505.2(h). Pursuant to this section, the Army maintains a three-person Privacy Review Board which hears requests to amend personnel files and permits a party, upon denial of an appeal, to make additions to his records explaining the nature of his dispute. Plaintiff failed to submit such statements.

The Army contends that Plaintiff's failure to inquire about the existence of negative evaluations in his file, request deletion of such material or other amendment of the record, and seek amendment or addition through "appeal" to the Privacy Review Board constitute an absence of administrative exhaustion which should mandate a summary judgment against Plaintiff and in favor of the Army.

The Court has already determined, in its order of January 22, 1985, that it found no reason not to follow the finding of the Court in *Nagel v. United States Department of Health, Education and Welfare,* 725 F.2d 1438 (D.C.Cir.1984) to the effect that: "An individual who states a claim for damages under the Act need not exhaust his administrative remedies." Accordingly, the Army acknowledges that this argument does not apply to the claim for monetary damages.

The monetary claims are barred, the Army contends, by the statute of limitations. Defendant has presented exhibits to show that Mr. Ertell knew in 1976 that the Memorandum was in his file, that he was aware of its contents, and that he recognized that it was hindering his chances for re-employment. This is, they argue, well beyond the one year period after which Plaintiff claims he believed the Kublin Memorandum had been destroyed. Therefore, the Department of the Army believes that Plaintiff was in possession of all of the facts giving rise to his cause of action for monetary damages in December of 1979 and that the statute of limitations began to run at that time. It was not, however, until August 1983 that he filed his complaint and the statute had allegedly run by December of 1981. Although the Army concedes that its misrepresentations in response to inquiries made on Plaintiff's behalf may preclude the erection of a limitations bar to the non-monetary claims, it makes no similar concession with respect to the monetary damages alleged. In addition, Defendant argues that it has been substantially prejudiced by having to develop a current defense to events occurring approximately ten years ago. For these reasons, the Department maintains that it is entitled to summary judgment on the monetary claims.

Finally, Defendant claims that personnel evaluations are statements of opinion not of fact and, therefore, the Privacy Act does not apply. Because of this alleged inapplicability, the Army asserts a right to judgment as a matter of law. The Department further claims that Plaintiff must, in order to prevail, prove that he would be a good employee, that he was the applicant best qualified, and that the only factor preventing his rehiring was the existence of the documents in his record. Moreover, the Army asserts that a finding for Plaintiff on a claim of this nature would chill the Government's efforts to hire and maintain competent employees.

*Position of the Plaintiff*

Charles Ertell denies that his claim for non-monetary damages is barred by a failure to exhaust administrative remedies. In support of this contention, he sets out a series of activities undertaken by others on his behalf which allegedly constitute requests for amendment of his personnel record. He apparently claims that the failure of the Army to remove the disputed documents constituted a refusal and that their failure to notify him of his right to seek review of the refusal to amend was a violation of 5 U.S.C. § 552a(d)(2)(B)(ii). Plaintiff believes that this particular violation of the Privacy Act estops Defendant from making its exhaustion argument.

In addition, Plaintiff points to the fact that the Army apparently maintained dual records—one an official personnel record and the other a record in an applicant file— but that he was not apprised of that fact or that statements made concerning the existence of certain materials in the files may have related to one and not the other. This allegedly deliberate confusion misled him, he claims, into believing that amendatory deletions had occurred in his files and that he had no further cause for worry. Consequently, he claims to have pursued his administrative remedies to the point which appeared to him to be necessary in view of assurances that had been given by the Army. Plaintiff concludes that he repeatedly requested amendment, even though not stated specifically in those terms, and that the Army failed either to make amendments or to advise him of his appeal rights. For these reasons, Charles Ertell believes that the motion for summary judgment on the grounds of failure to

exhaust administrative remedies should be denied.

Turning to the statute of limitations argument, Plaintiff claims that there is a material fact in dispute as to whether or not he knew that the two Kublin documents were in his file prior to 1979. Plaintiff further argues that he received assurances on May 9, 1980 and in July 1981 that no derogatory employment information was present in his records. He maintains that these assertions renew the statute of limitations and raise a material factual issue with respect to knowledge making summary judgment inappropriate.

The existence of a material factual dispute is also the basis on which Plaintiff urges the Court to deny summary judgment on the Army's asserted grounds that the evaluations represent opinions rather than facts. He cites the opinion of the Seventh Circuit Court of Appeals in *De-Bold v. Stimson,* 735 F.2d 1037, 1040–41 (7th Cir.1984) stating:

"The privacy act merely requires an agency to attempt to keep accurate records, and provides a remedy to a claimant who demonstrates that facts underlying judgments contained in his records have been discredited."

Plaintiff contends that, even if the final assessments are opinions or judgments, they are made on an underlying factual basis and the Privacy Act is, therefore, applicable.

### DECISION

Some review of the factual background is necessary at this point.

Apparently Plaintiff was aware of the negative personnel documents. He has, however, asserted his belief that the Kublin Memorandum for Record (MFR) which stated "destroy after one year or upon transfer" had been destroyed in 1977 and that the Kublin appraisal had never been placed in his file because he, Charles Ertell, had refused to sign it. It is not totally clear whether Plaintiff was aware of the Hughes document prior to 1982.

After having been referred and interviewed for several possible job assignments and failing to be hired despite what he considered to be excellent credentials, Plaintiff began to suspect the existence of negative evaluative material in his file. On April 23, 1976, he enlisted the aid of Congressman Edward Mezvinsky in getting the two Kublin documents removed from his file. The Congressman sent Ertell's request for a thorough investigation and expungement of the record to the Department of the Army and received a response from Charles Smith, Special Assistant for Congressional Affairs. Mr. Smith denied several charges made in Plaintiff's letter, only one of which arguably related to Mr. Ertell's personnel complaints, and made no response to his request to have the records expunged. Nor was any mention made of any review or grievance procedure. Plaintiff contends that this request by Congressman Mezvinsky was his first request for amendment.

Congressman Mezvinsky was followed by Congressman Jim Leach and Senator John Culver. The former wrote a letter to the Department of the Army to which he received a reply in November of 1979. In that response, William Lawrence, Chief of Civilian Personnel Office, stated:

"Mr. Ertell has been referred to selecting officials on 17 occasions since he first made application in July, 1977. Each time the Rock Island Arsenal Civilian Personnel Office was notified by the selecting official that the candidate chosen was someone other than Mr. Ertell.... Applicable regulations do not require the selecting official to specify in writing the reasons for not selecting individual candidates; rather, a written reason is provided supporting the selection of the individual to be offered the position. *However, a review of Mr. Ertell's file reveals that it contains a negative recommendation from one of his former supervisors, which may explain why he is not being selected.*" (Emphasis added).

Then Plaintiff asked the Congressman to request removal of the documents and

Leach received the following response on March 24, 1980 to his follow-up request:

"Mr. Ertell's OPF [Official Personnel Folder] is being retained in the custody of the Federal Records Center (FRC) in St. Louis, not at RIA. Although the Memorandum for Record (MFR) contains instructions that it is to be removed and destroyed after one year, the FRC has no authority to remove any document contained in the personnel folders of Federal employees. RIA has been instructed to request Mr. Ertell's folder from the FRC, to screen it upon receipt, and destroy the MFR. That document has not and is not being considered by RIA in their consideration of Mr. Ertell for re-employment. RIA will continue to consider him for each position for which he is qualified."

On May 6, 1980 Charles Smith reported to Congressman Leach that:

"An extensive search was undertaken to locate the OPF of Mr. Ertell. It was located in the Office of Workmen's Compensation Program, Department of Labor (DOL), Chicago, Illinois. *Mr. Tom Hunter, DOL, screened the entire OPF and determined that the Memorandum for Record dated 12 March 1976, had been withdrawn and destroyed. The screening further revealed the absence of any derogatory employment information in Mr. Ertell's OPF.* Since Mr. Ertell has an active compensation claim, DOL prefers to retain his OPF until final litigation." (Emphasis added).

A letter from Plaintiff to Congressman Leach on June 6, 1980 demonstrates his confusion about the interplay of two personnel files—one in Rock Island and the other apparently, and obscurely, in both Chicago and St. Louis. He also requested Leach to contact the Director of the Office of Personnel Management urging Ertell's immediate placement. Congressman Leach apparently made that request. The reply, dated July 21, 1981, from that office contained the following:

"We experienced some difficulty in locating the OPF. However, we have obtained the file from the Department of Labor, Branch of Hearing and Review in Washington, D.C. where Mr. Ertell has a compensation case pending. *We have thoroughly reviewed the OPF and did not find the March 12, 1976 Memorandum among the records in the file. Certainly, the Memorandum should have been removed one year after its date or upon transfer or separation from the agency whichever came first. Failure to remove such a non-permanent document from the OPF constitutes an administrative error. The extent of the corrective action, however, would have been removal of the Memorandum from the OPF. In this case the document had already been removed from the file.*

Upon further investigation, the document has been determined to be a supervisory appraisal of Mr. Ertell's work performance. *Since supervisors have an obligation to appraise employee performance, there is nothing irregular about the memorandum provided it is not retained in the employee's OPF beyond the expiration date or the employee's transfer or separation from the agency.*" (Emphasis added).

The letter further advised Congressman Leach that since Mr. Ertell was registered in the applicant supply file there was nothing to prevent his former supervisors from submitting additional negative evaluation reports. He also indicates that the negative documents are being returned to Mr. Ertell for his records.

Following a refusal of access to some documents in his "Personnel File" at the Rock Island Arsenal in the spring of 1982, Charles Ertell filed a Privacy Act Request on May 13, 1982. That request was granted and *he found all three personnel documents in his file* there.

Later, on July 2, 1982, in response to an inquiry from James Pierce of the National Federation of Federal Employees, Plaintiff learned that the Memorandum had been removed from his applicant file as well as his OPF.

"Since shortly after his [Ertell's] departure, his Official Personnel Folder (OPF) has not been maintained at this activity. As with the OPF's of all former employees, his was sent to the records-holding center in St. Louis. This activity does not believe, but does not know for certain, that the document of concern is in his OPF in St. Louis.

Mr. Ertell is continuing to receive consideration for employment through our applicant supply file for positions in which he has indicated an interest. *His application file no longer contains the Memorandum to which you referred. While we do not share your belief that this agency is required by law or regulation to remove the document, it was determined to be the prudent action to take.*" (Emphasis added).

Finally, on September 20, 1982, Ertell, by letter, acknowledged the removal of the *Kublin* Memorandum "which had been in [his] file for over six years" and requested the removal of the two negative appraisals. Plaintiff has asserted that he requested an opportunity to add corrective documents, however, the Court is unable to read such a request into the letter.

It is clear from the documents submitted that the Army never advised Plaintiff of his right to appeal any failure to clear his record. Mr. Ertell specifically sought such information only once—when he made his Privacy Act Request in May 1982—but the inquiry became moot on that particular matter when access was granted.

■ Having thus reviewed the factual sequence of events, the Court first turns to the request for summary judgment on the monetary damages premised on the existence of a statute of limitations bar. It is clear from the documents summarized above and from Plaintiff's own pleading that Charles Ertell knew in July of 1981 that there had been negative evaluations in his file which "may explain why he is not being selected;" (William Lawrence letter of November 19, 1979); that the MFR was still in his OPF on March 18, 1980; that an examination of the OPF in May of 1980

revealed the "absence of any derogatory employment information" therein; that failure to remove the documents "constitutes an administrative error;" and that there were two different files one of which ("applicant supply file") would be opened to admit appraisals from the same supervisors each time Plaintiff was reached for referral. Moreover, documents "inappropriate for permanent retention in the OPF" were no longer there because they were "returned for Mr. Ertell's records" (Steven Cohen letter of July 21, 1981) so he knew the content of the appraisals. A stamped date on the latter letter suggests that it was received on July 30, 1981. It is clear that on that date Charles Ertell *knew* that he had a cause of action against the Army for money damages. It was then that the statute of limitations began to run giving him until July 30, 1983 to file a complaint.

Plaintiff contends that his discovery of the negative evaluations in his applicant supply file in 1982 should start the statute running anew. While this may be a plausible contention, the Court does not believe it to be a correct one. Logically, Plaintiff's discovery would have had the effect of confirming his belief that he had been wronged and giving added strength to the existence of a cause of action. Since his prayer for damages could always be amended to reflect additional injury subsequent to those asserted in his complaint, the discovery is not such as should toll the running of the statute on a damage claim—it only improved the case he already had.

The Court believes that Plaintiff's position would be much more tenable in the context of his non-monetary claims where argument may be made that the injury is ongoing and still subject to agency remediation or that the running of the statute is equitably tolled by Defendant's active misrepresentations leading him to forego judicial action. Because he was seeking monetary damages for past injury, equitable tolling would not be applicable. Also, as indicated above, the discovery that the records were still in the applicant supply file does not give Plaintiff a new cause of action but

merely enhances any damages which may accrue to him on the original cause of action.

For these reasons, the Court finds that summary judgment should be granted on the monetary claims because they are barred by the statute of limitations. The Court also believes, according to the foregoing analysis, that the statute of limitations does not preclude an action on the non-monetary claims because Defendant's misrepresentations would lead Plaintiff to believe that further action to correct the records was unnecessary.

■ Turning next to the issue of exhaustion of remedies with regard to the non-monetary claims, the Court would be hard pressed to find, in view of the extensive correspondence from Congressmen Mezvinsky and Leach to the Department of the Army, that a request for amendment of the record was not made. It seems clear from an examination of the letters themselves that the two Congressmen were acting as representatives of Charles Ertell—much as an attorney would in the same circumstances—and that they were requesting examination and amendment of the records on Mr. Ertell's behalf. Moreover, it appears equally clear in examining the correspondence that the Army personnel who received them viewed these letters as requests to amend and responded accordingly. The Court believes that to find that this correspondence does not constitute requests to amend would exalt form over substance. The Court, therefore, holds that a written request for amendment was made to the agency by representatives of the Plaintiff.

After much delay and several contradictory letters, Plaintiff was assured in 1981 that the offending material had been removed from his record. When he was still not hired he began to suspect that he had been misinformed and that his personnel record still contained negative evaluations. He filed a Privacy Act Notice to see the records for himself. In the spring of 1982, he discovered that the very same material that he had been assured had been removed from his file was still present in it.

By this time, Plaintiff had become understandably skeptical about representations and reassurances from Army personnel and he made no further attempts to have the Army amend, correct, or remove any records either by way of correspondence or by filing a request with the Privacy Review Board. The Army has asserted that this election not to pursue agency review is a failure to exhaust administrative remedies and that Plaintiff is, therefore, barred from pursuing this judicial action. Defendant has further asserted that futility does not excuse a failure to exhaust.

■ In general, the remedies available through the established procedures of a state or local government or an administrative agency must be claimed in that forum before an aggrieved party seeks judicial review. *Myers v. Bethlehem Ship Building Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938); *Janowski v. International Brotherhood of Teamsters, Local No. 710 Pension Fund*, 673 F.2d 931 (7th Cir.1982). Such exhaustion can be statutorily mandated; if it is not, the applicability of the doctrine is committed to the sound discretion of the court. *Janowski v. International Brotherhood of Teamsters, etc.*, supra. The Court does not read the Privacy Act (5 U.S.C. § 552a) as *mandating* exhaustion. However, as the Seventh Circuit Court of Appeals held in *City of Peoria v. General Electric Cablevision Corp. (GECCO)*, 690 F.2d 116 (7th Cir. 1982):

> "The two doctrines, exhaustion and primary jurisdiction, are of course closely related—so much so that it is perhaps pedantic to insist on a distinction. Both seek to carry out a Congressional purpose, inferred from the language or history of a regulatory statute, or from the nature of the regulatory agency's responsibilities, of enabling the agency to make a record and a decision on a matter before the courts put their oar in."

This kind of informed discretion led the court of appeals for the District of Colum-

bia to determine in *Nagel v. United States Department of Health, Education and Welfare,* 725 F.2d 1438 (D.C.Cir.1984) that exhaustion of administrative remedies is, in fact, a prerequisite to bringing a civil suit under the Privacy Act to compel amendment of records maintained by a federal agency on the grounds that they are not accurate, relevant, timely, or complete. The *Nagel* court examined the statute carefully and determined that Congress intended to require exhaustion. This Court has repeated that exercise and concurs with the conclusion reached by the District of Columbia Court of Appeals.

■ The doctrine of exhaustion of administrative remedies is a judicially created one and is not absolute; it is also within the discretion of the Court to waive the exhaustion requirement when application of the doctrine would be unjust (*Goodrich v. U.S. Department of the Navy,* 686 F.2d 169 (1982)): when the established administrative procedures would prove unavailing or futile (*Continental Can Co., USA v. Marshall,* 603 F.2d 590 (7th Cir.1979)); or where there has been a denial of meaningful access (*Harper v. Kobelinski,* 589 F.2d 721 (D.C.Cir.1978)). In other words, the exhaustion doctrine is to be applied flexibly, with an eye toward achieving its underlying purposes. *Hormel v. Helvering,* 312 U.S. 552, 556–59, 61 S.Ct. 719, 721–22, 85 L.Ed. 1037 (1941); *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969); *Etelson v. Office of Personnel Management,* 684 F.2d 918 (D.C.Cir.1982).

As the Court reads the record, the case at bar is quite similar to *Harper v. Kobelinski,* supra, in which plaintiff Harper sought an injunction against continued use of information regarding him in the file of a co-worker and a judicial determination that some of the material in that file was false and should be expunged or amended. He had sought removal of the information at issue by letter addressed to the Small Business Association's (SBA) director of personnel. He was advised that his request could not be accommodated because the material was not in a file under their control. At that point, Harper filed suit and the SBA raised the doctrine of exhaustion of remedies as a defense.

Citing the requirements of § 552a(d)(2)(B)(ii) that a person be informed of the refusal, the reasons therefor, *and* "the procedures established by the agency for the individual to request a review of that refusal by the head of the agency or an officer designated by the head of the agency, and the name and business address of that official;" the District of Columbia Court of Appeals held that the district court could retain jurisdiction of the pending action finding that the employee did not pursue an administrative appeal because he was not apprised of the availability of such an appeal.

The Court has searched the record and finds nothing in any of the correspondence to indicate that Plaintiff was ever informed of the existence of the Privacy Review Board or of its function as an appellate body. The Army has contended that Plaintiff never requested this information or, alternatively, that the one request he made in a slightly different context indicated that he recognized the existence of appellate procedures. In light of the clear statutory language, neither of these arguments provides Defendant with sufficient support to permit it to invoke the doctrine of exhaustion of remedies.

It should be noted, as held by the *Association of National Advertisers, Inc. v. F.T.C.,* 627 F.2d 1151, cert. denied 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (D.C. Cir.1979) that: "jurisprudential concerns, such as those embodied in exhaustion of administrative remedies doctrine, do not bear on whether a court has jurisdiction but only on whether it should exercise that jurisdiction." The Court, therefore, holds that the requirement that Plaintiff exhaust all administrative remedies should not be employed to foreclose this action and this Court elects to exercise jurisdiction over the non-monetary claims.

■ Finally, the Court turns to the issue of opinion versus fact to determine wheth-

er summary judgment for the Defendant is warranted based on the allegation that these appraisals, as expressions of opinion, are not covered by the Privacy Act.

The Court has read the cases cited on this issue by the parties. It was clearly held by the court in *Blevins v. Plummer,* 613 F.2d 767, 768 (9th Cir.1980) that the Privacy Act provisions and the Air Force regulations set out in 33 C.F.R. § 806b.17 permit amendment of factual matters and not matters of opinion. In *Fagot v. FDIC,* 584 F.Supp. 1168 (D.P.R.1984), the court reviewed the case law and noted the holding of *Blevins v. Plummer* as set out above and implied some agreement. However, because it held that the absence of a "concrete, adverse determination based on those records" was fatal to plaintiff's Privacy Act claim, the *Fagot* court did not have to rule on that issue.

On the other hand, the quotation cited by Plaintiff from *DeBold v. Stimson,* 735 F.2d 1037 (7th Cir.1984), gives some evidence that the Seventh Circuit, in which this Court sits, believes that at least some opinion statements can give rise to Privacy Act claims.

The Court finds itself in philosophical accord with Judge Gesell's opinion in *R.R. v. Department of the Army,* 482 F.Supp. 770 (D.C.D.C.1980) which includes the following:

> "Accuracy of government-recorded personnel information is particularly important in our complex and breaucratically-interrelated society, where an individual's rights and benefits may well be influenced or determined by what some government agency has to say about him. The prejudice resulting from inaccuracy may affect determinations reached by third parties, public or private, as well as those made by the record keeping agency. Of course, no individual is entitled to shape or color such information according to his own whims or preferences. On occasion accuracy is achieved only by allowing a disputed question of fact *or judgment* previously recorded to remain in the record, qualified by subsequent data. On the other hand, it may be necessary to eliminate clear mistakes of fact or *irresponsible judgment* from an individual's file so as not to prejudice prospects for a fair determination of his rights or benefits.

The language of the act establishes that an individual may bring a civil action to compel the correction of inaccurate records. See 5 U.S.C. § 552a(g)(1) (1976). Although defendant would confine the scope of this cause of action to amending purely factual misrepresentations, the court does not so narrowly interpret the statute. Remedial legislation should be liberally construed in order to effect its obvious purpose. In this instance, the statute vests broad discretion in the district court to '... order the agency to amend the individual's record in accordance with its request or in such other way as the court may direct.' 5 U.S.C. § 552a(g)(2)(A) (1976). It would defy common sense to suggest that only factual erroneous assertions should be deleted or revised while opinions based solely on these assertions must remain unaltered in the individual's official file."

The court then goes on to say that once all of the underlying facts for such judgments have been discredited an agency may not refuse a request to revise or expunge. This difference between Judge Gesell's case and the one presently before this Court will be addressed shortly.

It is the opinion of this Court that the spirit of the Act, if not its letter, dictates that opinions maintained in and freely disseminated through a system of records, apparently (perhaps admittedly) causing concrete, adverse determinations, and allegedly grounded on demonstrably (although not proven) erroneous factual bases, are amenable to review with respect to Privacy Act issues. The Court cannot find, as did Judge Gesell, that the facts underlying prior professional judgments have been thoroughly discredited. However, at the very least, the Court believes that Plaintiff has demonstrated the existence of a materi-

al factual dispute which makes summary judgment inappropriate.

It is, therefore, ordered that Defendant's Motion for Summary Judgment is GRANTED on the issue of monetary damages and DENIED as to the non-monetary relief sought. Additionally, summary judgment rejecting the latter claims based on the two appraisals as statements of opinion is also DENIED.