837 F.2d 895
 Maximus T. ENGLERIUS, and the Fraternal Order of the Deer,
Inc., Plaintiffs- Appellants,
v.
VETERANS ADMINISTRATION, and Veterans Administration
Hospital (Beacon Hill, Seattle, WA), Defendants-Appellees.
 No. 85-3577.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 4, 1987.
Decided Jan. 28, 1988.
 
 Maximus T. Englerius, pro se.
 Robert Taylor and Charles Pinnell, Asst. U.S. Attys., Seattle, Wash., for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before CANBY, REINHARDT and BEEZER, Circuit Judges.
 REINHARDT, Circuit Judge:
 
 
 1
 Maximus Englerius appeals pro se the dismissal of his suit against the Veterans Administration for violation of the Privacy Act of 1974.[1] 5 U.S.C. Sec. 552a (1982). The district court dismissed the complaint as barred by the Act's two-year statute of limitations. Id. Sec. 552a(g)(5).
 
 
 2
 According to his complaint, which he filed under his former name Thomas P. Rallo, Englerius went to the Seattle Veterans Administration Hospital in January 1981 seeking medical treatment for a neck and back injury. Englerius asserts that his disability payments for his physical condition had recently been terminated or reduced and that he went to the hospital in part to have them restored. The hospital denied his request to be placed into physical rehabilitation, but instead offered to admit him into the psychiatric ward. Englerius spent one week there and was put through several psychiatric tests. According to Englerius, a VA psychiatrist wrote an "embellished" report and placed it in his medical file. Although his disability benefits were reinstated as a result of this psychiatric report, Englerius wanted the reinstatement to be based on his physical rather than his psychiatric condition.
 
 
 3
 On April 18, 1981, Englerius wrote to the hospital's chaplain and requested that the psychiatric report be removed from his file. Under the Privacy Act a federal agency cannot provide an individual access to his records or consider a proffered amendment to them unless the individual makes a request to the agency. 5 U.S.C. Sec. 552a(d)(1), (2). A VA official, in an affidavit attached to the VA's motion to dismiss, stated that Englerius's letter was forwarded to the Seattle VA Medical Center Director's Office on April 20, 1981, where it was treated as a request for amendment of records. The VA official further stated that "although written instructions were given to notify the veteran of the amendment procedure, no such action was taken. However, this letter was made a permanent part of the veteran's records at the medical center."
 
 
 4
 In December 1983, some two years and eight months after he requested that his records be corrected, Englerius filed this suit against the VA and the hospital. He requested the court to order that his medical records be amended "to show that he is normal and well." Instead the district court dismissed the Privacy Act claim as time-barred. Englerius appeals.
 
 
 5
 The question presented here concerns what act triggers commencement of the applicable statute of limitations period for a Privacy Act request to amend one's government records. This is a question of law that we review de novo. Fort Vancouver Plywood Co. v. United States, 747 F.2d 547, 552 (9th Cir.1984).
 
 
 6
 An analysis of a statute of limitations question necessarily begins with identifying the available causes of action. Englerius has two possible, and closely related, Privacy Act claims. The first is under 5 U.S.C. Sec. 552a(g)(1)(A), which states that:
 
 
 7
 Whenever any agency ... makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection, ... the individual may bring a civil action against the agency.
 
 
 8
 If an agency denies a request to amend a record, subsection 552a(d)(3) requires that the agency afford the petitioner an opportunity for review of the denial. If upon review the denial is affirmed, subsection (d)(3) requires the agency to notify the petitioner of his right to seek judicial review of the agency's action.
 
 
 9
 In its brief the government concedes that Englerius may have set forth a cause of action under subsection (g)(1)(A) of the Privacy Act against the VA, based upon its failure to review in conformity with subsection (d)(3) his request for amendment of records. Although it may be argued that Englerius may not assert such a claim because he never sought review of the VA's failure to act on his amendment request, it would be problematic at best were a statute to provide a remedy when an agency fails to review a denial of such a request, but bar a remedy when the agency fails to act at all on the request.
 
 
 10
 In any event Englerius has an alternative basis for his Privacy Act claim. Subsection (g)(1)(D) affords a cause of action against an agency that "fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual." At least two circuits have construed "adverse effect" to include emotional trauma. See Albright v. United States, 732 F.2d 181, 186 (D.C.Cir.1984); Parks v. IRS, 618 F.2d 677, 682-83 (10th Cir.1980). The VA concedes that it never acknowledged receipt of Englerius's request and failed to inform him of the procedures for making such a request. Such inaction would appear to violate subsection (d)(2)(B)(ii), as well as 38 C.F.R. Sec. 1.579(a)(2) (1986).
 
 
 11
 Under the Privacy Act, with respect to each of the alternative bases for Englerius's cause of action, the statute of limitations begins to run "from the date on which the cause of action arises." 5 U.S.C. Sec. 552a(g)(5). The VA, in its motion to dismiss, contended that suit must be brought "within two years of the person's request to the agency," and that here Englerius's letter was his request. The district court dismissed the complaint, after noting the date of the letter, on the basis that the two-year period had run. Because the district court dismissed the complaint without considering any factual matters, we must assume that it viewed the commencement of the limitations period question in the same manner as the VA. In this respect, the court erred.
 
 
 12
 The question when a cause of action arises under the Privacy Act is a matter of first impression in this circuit. We reject the contention that the limitations period begins to run at the time a request under the Act is made. We hold that the statute of limitations for a Privacy Act claim, 5 U.S.C. Sec. 552a(g)(5), commences at the time that a person knows or has reason to know that the request has been denied. Where the agency has not issued an express denial of the request, the question when a person learns of the denial requires a factual inquiry and cannot ordinarily be decided on a motion to dismiss.
 
 
 13
 Our holding is in accord with other circuits that have considered this question. Tijerina v. Walters, 821 F.2d 789, 797-98 (D.C.Cir.1987) (the statute of limitations begins to run when the plaintiff knew or had reason to know that adverse action had occurred); Diliberti v. United States, 817 F.2d 1259, 1262-63 (7th Cir.1987) (same); Bergman v. United States, 751 F.2d 314, 316 (10th Cir.1984) (same), cert. denied, 474 U.S. 945, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985); see Lepkowski v. Department of Treasury, 804 F.2d 1310, 1322-23 (D.C.Cir.1986) (Robinson, J., concurring in the judgment); Pope v. Bond, 641 F.Supp. 489, 499-500 (D.D.C.1986); Ertell v. Dept. of Army, 626 F.Supp. 903, 908 (C.D.Ill.1986). As Judge Mikva ably reasoned,
 
 
 14
 this view--which, as far as we can determine, no court has rejected--best accords with Congress's intent in passing the Act, which is our touchstone in determining when the statute begins to run. [citation omitted] The Act seeks to provide a remedy for governmental conduct that by its very nature is frequently difficult to discover.... Because possible violations of the Act are often not immediately apparent to the aggrieved individual, Congress's desire to provide a civil remedy would be poorly served if the cause of action could arise before the plaintiff even had reason to know of the violation.
 
 
 15
 Tijerina v. Walters, 821 F.2d at 797-98.
 
 
 16
 We join the Seventh, Tenth and District of Columbia Circuits in holding that a cause of action under the Privacy Act does not arise and the statute of limitations does not begin to run until the plaintiff knows or has reason to know of the alleged violation. Consequently, we remand the case to the district court for resolution of that question.[2] The district court may decide the matter on a motion for summary judgment or at a trial on the merits, depending on the nature of the record hereafter developed by the parties.
 
 
 17
 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION
 
 BEEZER, Circuit Judge, dissenting:
 
 18
 In January 1981, appellant Maximus Englerius was examined at the Seattle Veterans Administration Hospital for the purpose of evaluating his disability status. Englerius sought increased disability benefits and physical rehabilitation treatment.
 
 
 19
 After learning that benefit payments would be denied on the basis of physical disability, Englerius voluntarily submitted to a psychiatric examination. Thereafter, benefits, based on the psychiatric report, were awarded for psychiatric disability.
 
 
 20
 On April 18, 1981, Englerius requested that the psychiatric report be removed from his file despite the fact that his benefits were dependent on the report. The Veterans Administration Hospital never acknowledged receipt of the request.
 
 
 21
 Two years and eight months later, Englerius filed suit against the Veterans Administration. In addition to a damage claim, he sought to have the psychiatric report deleted from his file or amended "to show that he is normal and well." The district court construed the latter claim as a request under the Privacy Act of 1974, 5 U.S.C. Sec. 552a (1982). The government's motion to dismiss was granted on the grounds that a Privacy Act suit must be filed "within two years of the date on which the cause of action arises." 5 U.S.C. Sec. 552a(g)(5).
 
 
 22
 On these facts, we need only determine when Englerius' "cause of action arises" under the Privacy Act.
 
 
 23
 I agree with the majority that a "cause of action arises" under the Privacy Act when the plaintiff "knows or has reason to know" that (1) an error has been made by the agency, and (2) he has been wronged by such error.
 
 
 24
 This is the appropriate standard because the Privacy Act, 5 U.S.C. Sec. 552a(g)(5), states that if an agency "materially and willfully misrepresents any information ... the action may be brought at any time within two years after discovery by the individual of the misrepresentation." On the other hand, if willful misrepresentation is not apparent or alleged, "[a]n action to enforce a liability ..." may only be brought "within two years from the date on which the cause of action arises." 5 U.S.C. Sec. 552a(g)(5).
 
 
 25
 While the statutory language does not clearly state when a cause of action "arises" in a non-willful case, such as this one, it does indicate that Congress intended to distinguish the statute of limitations which governs a willful act from that which governs a non-willful act. Congress intended the courts to apply different standards. The statute establishes one limitation period for non-willful acts and another for willful acts.
 
 
 26
 The opinion correctly identifies the congressionally mandated standard, in accord with Bergman v. United States, 751 F.2d 314, 316 (10th Cir.1984). The court held in Bergman that a cause of action "arises under" the Privacy Act at the time when:
 
 
 27
 (1) an error has been made in maintaining the plaintiff's records; and
 
 
 28
 (2) the plaintiff has been wronged by such error; and
 
 
 29
 (3) the plaintiff either knows or has reason to know of such error.
 
 
 30
 I agree with the majority that this is the appropriate standard.
 
 
 31
 I disagree, however, with the result reached by the majority when applying this standard. Englerius had reason to know of the alleged error ten days after the report was filed, since he failed to receive the statutorily required acknowledgment.[1] He was thereafter given two years within which to file his action.
 
 
 32
 Even assuming Englerius was not aware of the agency's failure to comply with, or even respond to, his request within the ten-day period set out for response in 5 U.S.C. Sec. 552a(d)(2)(A), he must have been aware of the agency's decision not to remove, and to resume veteran's benefits on the basis of, his psychiatric examination.
 
 
 33
 Since Englerius, himself, states that he "needed assistance [from the Veterans Administration]" prior to his visit in January 1981; since he states that he began receiving "checks" from the Veterans Administration after his visit; since he was informed, at the time of his visit that physical disability would not form the basis of any future benefit checks; and since he confirms that he knew being admitted for "a week ... at the hospital" to undergo psychiatric tests might thereafter support benefit eligibility, I must conclude that Englerius "knew or had reason to know" that the allegedly erroneous report had not been removed when he received his first monthly benefit check, following the January 1981 visit.[2] Had Englerius' request been granted, the offending report would have been removed. Had the report been removed, Englerius' benefits, known by Englerius to be premised on that report, would have terminated. Since they did not terminate, and since two years and eight months elapsed before Englerius felt compelled to bring this suit, I conclude that the suit is untimely, even when applying the quite reasonable standard established by the majority.
 
 
 34
 I would affirm the district court.
 
 
 
 [1]
 Englerius also appeals three other decisions of the district court: (1) the dismissal of his corporation as a plaintiff; (2) the dismissal of his medical malpractice claim for failure to exhaust administrative remedies; and (3) the dismissal of his request for medical treatment for lack of subject matter jurisdiction. We address these issues separately in our memorandum disposition filed concurrently with this opinion
 
 
 [2]
 The dissent argues that Englerius had reason to know of the alleged violation either ten days or one month after he submitted his request to amend his file
 The ten-day period refers to the requirement that an agency acknowledge within ten days receipt of a request to amend. 5 U.S.C. Sec. 552a(d)(2)(A); see 38 C.F.R. Sec. 1.579(a). We fail to see why Englerius should have interpreted the VA's failure to acknowledge receipt of his request as notice that his request had been denied.
 While both the statute and VA's regulations implementing the statute suggest that agency action on requests to amend be "prompt", neither establishes a deadline by which the agency must inform the petitioner that his request has been accepted or denied. See 5 U.S.C. Sec. 552a(d)(2)(B); 38 C.F.R. Sec. 1.579(a)(1), (2). The question of when a petitioner should know from the VA's continued silence that it has failed or refused to act upon his request is a factual one to be determined on the basis of the record in the particular case.
 The thirty-day period mentioned in the dissent apparently refers to an argument that Englerius should have known from the level of his monthly benefit checks that his request to amend had been denied. The government did not make any such contention on appeal. If the argument has any merit whatsoever, and it is far from clear that it does, the government can present it to the district court at the appropriate time.
 
 
 [1]
 5 U.S.C. Sec. 552a(d)(2)(A). The majority states, at footnote 2, that "agency action on requests to amend [need only] be 'prompt' " and that "neither [the statute nor regulations] establish[ ] a deadline by which the agency must inform the petitioner that his request has been accepted or denied." This is not accurate. The agency has a statutory duty which precedes a "prompt[ ]" determination on the merits. Congress has plainly stated: "not later than 10 days ... after the date of receipt of such request, (each agency ... shall) acknowledge in writing such receipt." 5 U.S.C. Sec. 552a(d)(2)(A). Absent this acknowledgment, a petitioner has no way of knowing that his petition is, in fact, under consideration. He must reasonably assume, in light of the deadline, that it is not. See, e.g., Hayden v. U.S. Dept. of Justice, 413 F.Supp. 1285 (D.D.C.1976) (thirty-five day delay in acknowledgment violates statutory duty to respond)
 
 
 [2]
 Englerius concedes timely receipt of subsequent benefits