Michael J. **BIONDO**, Haskell R. Brown, Jr., Danie O. Gillespie, Junia E. Mott, Lindsay K. Nelson, James Shaw, and Robert Clements, Jr., Plaintiffs,

v.

**DEPARTMENT OF the NAVY, Defendant.**

No. 2:92–184–18.

United States District Court, D. South Carolina, Charleston Division.

Aug. 9, 1995.

Plaintiffs pro se.

Margaret Seymour, Office of U.S. Attorney, Columbia, SC, for defendant.

## ORDER

NORTON, District Judge.

This Privacy Act case is before the court on Defendant's Motion for Summary Judgment filed March 1, 1995. The court held a hearing on this motion on May 25, 1995. Because no Plaintiff has proved a violation of the access provisions of the Privacy Act, Defendant's motion is granted as to Biondo, Brown, Gillespie, Shaw, and Clements.

### I. Background

In July 1990, the United States Office of Special Counsel (OSC) conducted a routine administrative investigation into alleged impropriety in personnel actions regarding two employees of the Charleston Naval Shipyard (CNSY or Shipyard). Plaintiff Michael Biondo, one of the two CNSY employees, instigated the investigation by filing with the OSC a complaint alleging that reprisal action was taken against him at the CNSY due to his union activity. During the investigation, Peter Black, the OSC investigator, questioned the maintenance of "unofficial personnel files" or "shop files" by employee name or number in the waterfront administrative shops.[1] Kathleen L. Dix, Supervisor of Ad-

ministrative Service Support Specialists in the CNSY Service Group, gave Mr. Black these files maintained in her office concerning the two employees at issue.

Mr. Black revealed his concerns about the unofficial personnel files to the CNSY Federal Employees Metal Trades Council on July 9, 1990. Michael Biondo and nine other Shipyard workers filed a complaint in this court on January 21, 1992, amended on February 10, 1992, alleging various violations of the Privacy Act in connection with these files.[2]

Due to Mr. Black's concerns and the pending realignment, reorganization, and eventual closing of the CNSY, hundreds of boxes and bags of the "unofficial personnel files" or "shop files" were removed from the waterfront shops and marked for destruction either at the time this case was filed or shortly thereafter. Plaintiffs were concerned that the scheduled destruction was an attempt to destroy evidence of Privacy Act violations. Therefore, on February 19, 1992, this court enjoined Defendant from "destroying or discarding any and all original personnel records of any and all employees of the Charleston Naval Shipyard." Order at 2.

██ On August 17, 1992, Plaintiffs filed a second amended complaint, and Defendant subsequently moved to dismiss. On June 29, 1993, this court dismissed many of Plaintiffs' causes of action, leaving viable only the claims for violation of access rights under subsection (d)(1) of the Privacy Act.[3]

1. These files were called "unofficial personnel files" or "shop files" to distinguish them from the Official Personnel Files maintained at the Main Personnel Office. The existence of these files had been published in the Federal Register, see Fed.Reg. Vol. 55, No. 24, as well as referenced in the collective bargaining agreement between CNSY and Plaintiffs' union. Defendant says the "unofficial personnel files" were maintained in the waterfront shops "for the convenience of management since the 'main' personnel office was a considerable distance away. These documents were available for review by management as any personnel file would be available. It made sense to have these duplicate shop files located in proximity to the waterfront employees and supervisors, as opposed to having these people go all the way to Building 76—the building furthest from the waterfront—to view a file." Def.'s Resp. to Pls.' Interrog. at 10.

2. Eleven other cases alleging virtually identical facts and violations were subsequently filed, bringing the total number of CNSY plaintiffs to nearly one hundred.

3. Plaintiffs had also sought damages for improper maintenance of files under subsection (e) of the Privacy Act. There are some statements in Peter Black's 1990 Report of Investigation that point to poor, possibly improper, maintenance of the "unofficial personnel files," particularly with regard to keeping outdated materials due to a failure to regularly purge files. Whether such poor maintenance amounts to a Privacy Act violation is no longer at issue in this case, however, because this court dismissed the subsection (e) claims. Order of 6–29–93. A plaintiff attempting to prove a subsection (e) violation must show that he or she was harmed by the agency's viola-

In October 1993, Defendant, under the supervision of the court and a representative of Plaintiffs and their unions, physically transferred all of the files, which were in burn boxes and bags, to a room adjacent to the CNSY legal office. On December 21, 1993, the court ordered Defendant to make available for Plaintiffs' review all "government records subject to this litigation which are in possession of the United States Navy and stored in the legal office at the Charleston Naval Shipyard." Order of 12–21–93 at 1. The court outlined procedures to be followed by Defendant and Plaintiffs that allowed the remaining Plaintiffs access to these files "for the purpose of preparing this case." Order of 12–21–93 at 3.

On February 4, 1994, this court, at Plaintiffs' request, orally altered the June 29, 1993 Order and allowed Plaintiffs Pope, Biondo, and Murray to retain their claims for Privacy Act access violations. The court ordered that Plaintiffs Pope, Biondo, and Murray be granted the same access rights to files being stored by Defendant as the other Plaintiffs enjoyed pursuant to court order.

The attorney who helped craft this lawsuit on Plaintiffs' behalf—Michael Rose—is now uninvolved. Three of the original ten Plaintiffs—Charlene Driggers, James E. Pope, and John Murray—voluntarily dismissed their claims. Another Plaintiff—Robert Clements—decided during the course of this litigation to represent himself. Four Plaintiffs—Michael Biondo, Haskell Brown, Danie Gillespie, and James Shaw—are now represented by Douglas Borsich, due to their dissatisfaction with Mr. Rose's performance. Two Plaintiffs—Lindsay Nelson and Junia Mott—were represented by Attorney Rose until May 1995, when he withdrew as counsel for these final two clients. Due to various procedural abnormalities and the fragmented nature of the representation in this case, the hearing on Defendant's March 1, 1995 summary judgment motion pertained to only Biondo, Brown, Gillespie, Shaw, and Clements.

## II. Standard for Summary Judgment

■ Rule 56(c) requires that the district court enter judgement against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To prevail on a motion for summary judgement, the Navy must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that it is entitled to judgement as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of Plaintiffs. *See id.* at 257, 106 S.Ct. at 2514–15. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of

tion and must establish a causative link between the improper maintenance of files and an adverse personnel action he or she suffered. *Quinn v. Stone*, 978 F.2d 126, 131 (3d Cir.1992). None of the Plaintiffs was able to make such a showing. In fact, Peter Black acknowledged that he, too, was unable to link the files to an adverse impact on Biondo, saying "I would have been pleased as a result of my investigation had I been able to show a nexus." Black Dep. of 5–18–93 at 81.

Interestingly, Peter Black's Report of Investigation, which contains many inconsistent statements about the nature of the files from administrative personnel who did not profess to be Privacy Act experts, indicates that "unofficial personnel files" had been maintained at CNSY since the 1940s and that Black's concerns were an impetus for a subsequent revision or constitution of the system. Report at 3, 15, 18.

CNSY personnel responded to Black's concerns by, first, dismantling and reassembling the files in another format and eventually eliminating the system altogether, in conjunction with the closure of the waterfront administrative shops. *See* Scott letter of 8–12–91. CNSY maintains, however, that the files, even as previously assembled, contained merely copies of items that were maintained in official files elsewhere, although some were outdated. *Id.;* Driggers letter of 8–24–90. CNSY also contends that it was not in violation of the Act when the files were maintained in the shops, stating that a 1990 internal review labeling such practice a violation was later found by the Navy's Privacy Act Coordinator, Judy Wise, to be "faulty" and "so inaccurate that I basically threw it out and started from scratch" in evaluating the system. Wise dep. at 38, 44.

summary judgement in that party's favor. *Id.* at 251–52, 106 S.Ct. at 2511–12. Plaintiffs cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." *See Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). To survive the Navy's motion, Plaintiffs may not rest on their pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. *See Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553. As the *Anderson* Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 251, 106 S.Ct. at 2511–12.

### III. Analysis

■ The Privacy Act of 1974, 5 U.S.C. § 552a, establishes both individual rights involving personal data maintained by the Federal Government and employee responsibilities relating to the collection, maintenance, and use of personal information kept in a system of records. Plaintiffs claim they were denied access to their unofficial personnel files in violation of the Privacy Act. Section (d) of the Act provides, in part:

(d) Access to records.

—Each agency that maintains a system of records shall—

(1) upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any portion thereof in a form comprehensible to him ....

5 U.S.C. § 552a(d)(1). If an agency "refuses to comply with an individual request under subsection (d)(1) ... the individual may bring a civil action against the agency." 5 U.S.C. § 552a(g)(1)(B). In any such suit, "the court may enjoin the agency from withholding the records and order the production to the complainant of any agency records improperly withheld from him." 5 U.S.C. § 552a(g)(3)(A).

■ For all actions brought under the Privacy Act, there is a two-year statute of limitations requiring that the action be brought within two years from the date on which the cause of action arose. 5 U.S.C. § 552a(g)(5); *see Bergman v. United States,* 751 F.2d 314, 316 (10th Cir.1984), *cert. denied,* 474 U.S. 945, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985); *Diliberti v. United States,* 817 F.2d 1259, 1262–64 (7th Cir.1987); *Englerius v. Veterans Administration,* 837 F.2d 895 (9th Cir.1988) (statute of limitations begins to run when plaintiff knows or has reason to know of violation).

■ For actions alleging violation of access rights under the Privacy Act, administrative remedies must be exhausted prior to bringing suit. *Theriault v. United States Bureau of Prisons,* 2 G.D.S. Para. 82,163 (W.D.Tenn.1981). Whether the administrative remedies that must be exhausted include an administrative appeal is not clear. Many agencies voluntarily offer an appeals process, but one district court has held that exhausting an appellate remedy is not required before instituting suit. *Mervin v. Bonfanti,* 410 F.Supp. 1205, 1206 (D.D.C.1976). The Second Circuit Court of Appeals wrote that "to require further exhaustion would not only contradict the plain words of the statute but also would undercut Congress' clear intent to provide speedy disposition of these claims." *Diederich v. Department of the Army,* 878 F.2d 646, 647 (2d Cir.1989).

Other courts have held that a claim under the Privacy Act for refusal of access to records "require(s), as a prerequisite to bring a suit, that a plaintiff seek *review* from the agency for a denial of access.... Only after exhaustion of these administrative remedies may a court grant equitable relief." *Hass v. United States Air Force,* 848 F.Supp. 926, 930 (D.Kan.1994); *see Haase v. Sessions,* 893 F.2d 370 (D.C.Cir.1990) (a plaintiff must seek amendment or access from the agency and even seek review within the agency before coming to court). The court in *Hass* noted:

Plaintiff again provides no documentation that any such appeals were ever made, nor does she rebut defendant's evidence that such appeals were, in fact, not made. Air Force appeal procedures are clearly set

forth in its Privacy Act guidelines.... Thus, to the extent that plaintiff's complaint states a claim under the Privacy Act for refusal of access or refusal to amend, this court grants summary judgment to defendant for plaintiff's failure to exhaust administrative remedies.

*Hass*, 848 F.Supp. at 930. The purpose of the requirement of an exhaustion of remedies is to allow the agency the opportunity to exercise its expertise and develop a record for review. *Hammie v. Social Security Administration*, 765 F.Supp. 1224, 1225 (E.D.Pa.1991). If the appeal process is bypassed, the agency will be lacking a record for review as to why a document was not released to an individual. If the agency is given the opportunity to correct misunderstandings or errors, then the courts are spared a considerable expenditure of time.

At any rate, the original remedy required by statute must be exhausted. If the procedure set forth in the Act has not been followed, then no violation for refusal of access could possibly be shown. *See* Litigation Under the Federal Open Government Laws 289 (Allan Robert Adler ed., 17th ed. 1992).

■ To prove an access violation, each Plaintiff must show (1) that a request for records was made; (2) that the request was denied; and (3) that such denial or failure to act was improper under the Privacy Act. 5 U.S.C. § 552a(d)(1), (g)(1)(B), (g)(3)(A).

As mentioned earlier, this action reached district court in a most unusual posture due to the scheduled realignment, reorganization, and closure of the CNSY. The files at issue, which were boxed/bagged and marked for destruction, remain in existence today due only to the Order of this court preventing Defendant from going forward with the destruction. These files were at one time retrievable by employee name or number, but are now stored in a room in a most non-orderly fashion. For these reasons, this court did not first ascertain whether Plaintiffs had ever been improperly denied access to these files before granting Plaintiffs access in its December 21, 1993 Order. Likewise, the court ordered Defendant not to withhold any of these records without making a find-ing that Defendant had improperly withheld such records in the past.

■ Each Plaintiff is now called upon to prove that an access violation occurred. Interestingly, the only relief the court can give a successful Plaintiff for an access violation is to "enjoin the agency from withholding the records and order the production to the complainant of any agency records improperly withheld from him." 5 U.S.C. § 552a(g)(3)(A). As stated in *Smith v. Continental Assurance Co.*, 1991 WL 164348 (N.D.Ill.1991):

> In any suit brought under 5 U.S.C. § 552a(g)(1)(B) for failure to honor a Privacy Act request, a plaintiff may seek a court order compelling the production of the documents which have been withheld by the agency in question. 5 U.S.C. § 552(g)(3)(A). Successful plaintiffs may also recover reasonable attorneys' fees and litigation costs. 5 U.S.C. § 552a(g)(3)(B). ***Damages, however, are not recoverable in such an action.*** Thurston v. United States, 810 F.2d 438, 447 (4th Cir.1987).

> In an access case, "[o]nce the requested documents have been produced, the claim for relief ... becomes moot." *DeBold v. Stimson*, 735 F.2d 1037, 1040 (7th Cir. 1984) (U.S. Postal Service turned over documents requested under FOIA during the course of the litigation.); *See also Lovell v. Alderete*, 630 F.2d 428 (5th Cir.1980) (Although the information was delivered late, where plaintiff received all of the requested documents, his action was moot.)

*Id.* at *3 (emphasis added).

As stated, this court has already ordered full access to the records to the extent practicable. Therefore, although no finding of a violation has been made, the action is moot except for the possibility of an award of attorneys' fees and costs, which can be made to plaintiffs who "substantially prevail[ ]." 5 U.S.C. § 552a(g)(3)(B). Each plaintiff is therefore called upon to prove an access violation, not in hopes of getting further injunctive relief, but in hopes of winning an award of fees and costs.

### A. Michael J. Biondo

Biondo has filed numerous Privacy Act requests and has given the court evidence of some of them. However, none of the requests of which he has given the court evidence afford Biondo relief under the Privacy Act. Roughly, they fall into five categories: (1) requests which afford no relief because the statute of limitations has run; (2) requests which resulted in provision of the requested documents; (3) requests which were filed after this civil action was instituted; (4) requests which resulted in a denial of access for a given, proper reason; and (5) requests to which Biondo failed to specify what action was taken in response. Following are examples, taken from Biondo's exhibits, of the deficiencies in his efforts to prove a violation.

### (1) Biondo Failed to Meet the Statute of Limitations

Biondo filed a formal Privacy Act request on April 10, 1987 seeking "all Official (sic) and Unofficial Peronnel (sic) records, maintained in the shop or group personnel on Michael J. Biondo." Biondo Ex. 11. This request properly specifies the files sought, but it cannot serve as a basis for relief for a suit brought in 1992 because the Privacy Act has a two-year statute of limitations. 5 U.S.C. § 552a(g)(5). (Furthermore, Biondo has not shown that he was denied access in response to this request; in fact he partially completed Part III of the form, "Acknowledgment of Receipt of Record," by signing the form on April 21, 1987.)

### (2) Biondo Was Provided Access

On August 26, 1990, Biondo requested information relative to an investigation held in March with Mr. Jerry Cherry. Biondo Ex. 2. On October 26, 1990, Biondo received a responsive letter stating the "information you requested is enclosed." Biondo Ex. 2A. Biondo has failed to show the court how this could be a violation of his access rights under the Privacy Act.

### (3) Biondo Was Involved in Pending Civil Action

On July 13, 1992, Biondo filed a formal "Privacy Act Request and Response," which stated as follows:

I request copy of all records, Official and Unofficial Personnal records maintained in Code 160. "Secret file" "Industrial Relations File" Industrial Relation Office and Code 107 Legal. "BPAP file" Shop Note File" "N.I.S., W.F.A., I.G. Congress file." O.S.C. Investigation File."

Biondo Ex. 5 (sic throughout). This request was made six months after this civil action was filed. Clearly, it cannot serve as a basis for relief in this case.

### (4) Biondo Has Not Shown That Denial Was Improper

On June 9, 1989, Biondo filed a formal "Privacy Act Request and Response," which requested the following:

All Document Pursant to Any Law, Right of M.J. Biondo Allegation Tape Phone Conversation Note Taken on Invesigation from Waste Fraud Abuse from Time of Record. 1981 to Present Day.

Biondo Ex. 8 (sic throughout). On June 21, 1989, Myra Childress, a Privacy Act Assistant with the CNSY Industrial Relations Office, responded on Biondo's "Privacy Act Request and Response" as follows:

The documents you requested are not retrievable by your personal identifier and therefore not covered by the provision of the Privacy Act of 1974. If you have any further questions, please call me at extension 3–3919 or 3–5933.

Biondo Ex. 8. Biondo has not asserted or offered evidence to show that this denial was improper and in violation of his access rights under the Privacy Act, nor has he provided the court with any evidence that he administratively appealed this request.

Similarly, on April 24, 1987, Biondo filed a formal "Privacy Act Request and Response," which stated as follows: "I REQUEST COPY'S OF TIME CARDS ON SEPT./9–25–26–27–28, 1983 OCTOBER 26–27–28–29–31–1983 ALSO OF LEAVE BLANKS OF THES[E] DATE'S ABOVE. Biondo Ex. 13 (sic throughout). On May 5, 1987, a payroll supervisor responded on the "Privacy Act Request and Response" form as follows:

"NAVCOMPT regulations require time card or copies of time cards be held 3 years. Records are no longer available." Biondo Ex. 13. Again, Biondo has not asserted or offered evidence to show that this denial was improper and in violation of his access rights under the Privacy Act, nor has he provided the court with any evidence that he administratively appealed this request.[4]

### (5) Biondo Has Not Shown That Access Was Denied

■ On June 2, 1988, Biondo filed a formal "Privacy Act Request and Response," which requested the following: "Documents pertaining to Biondo's allegations to NIS." Biondo Ex. 10. The "Privacy Act Request and Response" form used at CNSY contains a section called "Agency Response." The agency can check one of various boxes indicating the action taken on the request:

__ 1. No information concerning you is contained in the indicated record system.

__ 2. Requested information is provided herewith.

__ 3. Requested information has been located. A copy or abstract will be provided upon receipt of the fee indicated to cover reproduction costs.

__ 4. The information requested is exempt from disclosure under the law, as follows:

__ 5. Your request is being processed. You will receive a response by approximately _____.

__ 6. The following additional information is needed to respond to your request.

In the portion of Biondo's 6–2–88 form labeled "Activity Response," no box is checked. Therefore, this court is unable to determine what the agency did in response to Biondo's request. This court cannot afford relief for denial of access if no denial is proved. Because administrative remedies must be exhausted in access cases, *Theriault v. United States Bureau of Prisons,* 2 G.D.S. Para. 82,163 (W.D.Tenn.1981), it is not enough to prove that a record was requested. To exhaust the remedy available under the Act and therefore earn the right to sue in federal court, a plaintiff must also show that access to the record was denied. Biondo has submitted numerous "Privacy Act Request and Response" forms showing that he requested documents, but very few showing the agency response, despite the fact that a requesting individual must be given "written denial of access." SECNAVINST 5211.5D(11)(d).

In sum, Biondo has not identified a particular record that was wrongfully withheld from him. Citing his Exhibits 4 and 5, Biondo states that "I have had access to about 954 documents and have been denied access to about 1600 documents on myself." Resp. to Def.'s Req. to Admit at 3. Biondo's Exhibits 4 and 5 do not offer evidence of this contention; further, merely stating that one has been denied access to 1600 documents is not sufficient to withstand summary judgment. Biondo has not proved that a request was made, that it was denied, and that the denial was improper under the Privacy Act.[5]

### B. Haskell Brown, Jr.

Brown has failed to provide any evidence of denied access to retrievable files. The following response to Defendant's Request to Admit # 1 is indicative of the general nature of Brown's unsupported allegations:

*Request:* Please admit that Plaintiff did not file a formal Privacy Act request with the Charleston Naval Shipyard (CNSY)

---

4. Even if he were to make out a violation on either of the above two requests, any action on such violation should have been brought within two years after the cause of action arose and would therefore be barred by the statute of limitations.

5. In a document titled " 'Secret File Discoveries' by Michael J. Biondo," which is an exhibit to Biondo's opposition to Attorney Rose's Motion to Be Relieved as Counsel, Biondo discusses 26 various files that he located. He alleges certain information in these files to be incomplete, inaccurate, and untimely, in violation of the Privacy Act. However, such allegations are irrelevant to an access case under the Privacy Act, for reasons stated above. (In fact, these allegations make it clear he *has* had access to these files.) Such allegations would be relevant to a subsection (e) case for damages, but, as stated above, this court has already dismissed Plaintiffs' damages actions.

Personnel Office to review personnel documents prior to filing the present action. *Answer:* I, Haskell R. Brown, Jr., was denied. Repeated requests for my records to the Privacy Act coordinator are indicated in Myra Childress–Piggot's Deposition.

Gov't Ex. 5 at 1. In answering another request to admit, Brown responds that he "submitted a request in the mid–80's which somehow was re-routed" and he "did not hear a word for 6 to 8 months." *Id.* at 2. No evidence is offered to support this allegation.

Brown's claims, like Biondo's, are insufficient in several respects. Brown has failed to provide evidence of filing a formal "Privacy Act Request and Response" which was later denied. He offers as a basis for his claim undocumented requests for which the statute of limitations has long expired. He simply has not proved an access violation of the Privacy Act.

### C. Danie O. Gillespie

Gillespie has failed to provide any evidence of denied access to retrievable files. Again, his response to Defendant's Request to Admit # 1 is telling:

> *Request:* Please admit that Plaintiff did not file a formal Privacy Act request with the Charleston Naval Shipyard (CNSY) Personnel Office to review personnel documents prior to filing the present action.
> *Answer:* I, Danie O. Gillespie, did file several Privacy Act requests, Mr. Rose Petition no date, Mr. Rose letter dated August 6, 1991 and his Office of Special Counsel complaint of Reprisal for non-selection for diver dated September 26, 1991.
>
> Prior to filing the present action: Enclosed EEO Counselor's report April 5 1990, filed about November 16, 1989.

Gov't Ex. 6 at 1. No documents are provided to support any of these mostly incomprehensible claims.

Looking back to the Second Amended Complaint, Gillespie alleges that:

> In January, 1992, and again in March, 1992, Plaintiff Gillespie requested in writing from the Defendant that Plaintiff Gillespie be provided a copy of his personnel, overtime and other records being maintained about him by the Defendant. Plaintiff Gillespie still has not received from the Defendant a copy of the records being maintained about him by the Defendant.

Compl. at § 58. The problems with these allegations are numerous: (1) They are completely undocumented, which is OK for a complaint but not for a summary judgment motion. (2) They fail to specify exact dates: Was a request made in January 1992 before this action was filed or after the documents were involved in litigation? (3) They fail to provide specifics concerning exactly what documents were requested and what reasons were given for a denial of access.

Gillespie has failed to provide evidence of filing a formal "Privacy Act Request and Response" that was later denied. He has not proved an access violation of the Privacy Act.

### D. James Shaw

Shaw has failed to provide any evidence of denied access to retrievable documents. The Second Amended Complaint provides:

> On or about November 25, 1991, Plaintiff Shaw gave a written request to employees of the Defendant requesting that Plaintiff Shaw be permitted to review, and be given a copy of, records regarding overtime for Plaintiff Shaw in the possession of the Defendant. Plaintiff Shaw never has received any of these records requested.
>
> In March, 1992, Plaintiff Shaw gave a written request to employees of the Defendant requesting that Plaintiff Shaw be permitted to review, and to be given a copy of, all records regarding Plaintiff Shaw in the possession of the Defendant. Plaintiff Shaw never has received any of these records requested.

Compl. at §§ 63–64. As with Gillespie's allegations, Shaw's allegations remain completely undocumented three years after the action was filed. Shaw's bald allegations are not sufficient to withstand summary judgment. Further, without a "Privacy Act Request and Response" or other written information, this court cannot tell why a denial, if any, was made. As previously stated, a denial of access must be in writing. SECNAVINST

5211.5D(11)(d). Further, there are numerous valid reasons to withhold documents under the Privacy Act. *See* 5 U.S.C. § 552a(j)–(k). Without this information, Shaw has not offered to the court any evidence to support his claims that he suffered an unjustified withholding of documents in violation of the Privacy Act.

### E. Robert M. Clements

■■■ Clements has failed to provide any evidence of denied access to retrievable documents. He has submitted no "Privacy Act Request and Response" forms. At oral argument on this motion, the court asked Clements to give specific instances in support of his claim. He named two: the first request, in either 1976 or 1977, cannot afford relief because the statute of limitations has run (in addition to the lack of proof of wrongful denial); the second request, in either 1993 or 1994, cannot afford relief because it was made after this civil action was filed.

In his Reply to Defendant's Motion for Summary Judgment, Clements makes statements such as the following: "I ask why so many copies are made and sent to so many different people. This, in itself, would lean to Privacy Act violations, by virtue of so many copies of records, kept by so many people and without the employee's knowledge of this." Reply at 1–2. In making this statement, Clements fails to focus on the statutory boundaries set by the Privacy Act that specify what constitutes a violation and what doesn't. Making numerous copies of a document does not "lean to" a violation, and even if it did, it is not relevant to whether Defendant denied access to Clements. In his "Answer to Seymour's Motion for Summary Judgment," Clements states, "The only logical reason that they would keep these files would be to use them against the employees." Answer at 1–2. In actuality, Defendant has explained a very logical reason for having additional personnel files in the waterfront administrative shops, *see* Footnote 1, and Clements has simply chosen to disbelieve such reason.

In essence, Clements' complaint is a collateral attack on previous adverse decisions by CNSY management that had nothing to do with the denial of access to a file. In opposing Defendant's summary judgment motion, Clements states:

> Exhibit "1" is a decision by the Merit Systems Protection Board that reinstated me for being wrongfully terminated for my Union activity. In it, Mr. Bob Cheverie, Shop 56, Shop Head, who is upper level management and shipyard trained, is shown to have no credibility. This is reflective of all management at the shipyard. It is proof that shipyard management cannot be trusted.

*Id.* This statement reflects a complaint against management, which was legitimate according to a 1983 decision of the Merit Systems Protection Board, but does not state a legitimate claim cognizable under the Privacy Act. *See Hubbard v. EPA,* 809 F.2d 1 (D.C.Cir.1986) (a plaintiff's collateral attack on questioned agency personnel actions does not state a claim for violation of the Privacy Act.) Clements has simply not proved an access violation under the 5 U.S.C. § 552a(d)(1).

### F. All Plaintiffs

In the Privacy Act, Congress enacted significant limitations on governmental record keeping in an effort to protect an individual's right to privacy and access to personal information. Congress also provided fairly straightforward remedies for persons whose rights to privacy have clearly been violated by governmental record maintenance. In this statutory grant of relief, however, Congress did not provide for persons who cannot actually prove that they have been affected by a Privacy Act violation.

Plaintiffs in these actions have demonstrated numerous times a not-unexpected lack of understanding of their rights under the Privacy Act. There seems to be a lack of understanding of the elements that must be shown to state a claim for access violation. For Plaintiffs to expect this court to grant relief for an access violation under the Privacy Act when this court does not, in most instances, even know what particular file Plaintiff claims Defendant withheld, much less the basis on which Defendant withheld it, is too much. That undocumented claims

such as Plaintiffs were not meant to be sufficient for relief under the Act is clear from the remedial scheme itself: it envisions the court examining the records *in camera*. SECNAVINST 5211.5D Ch. 13(B)(2) ("the judge may review the records in the privacy of his or her chambers to determine whether the records or any portion thereof may be withheld under any of the specific exemptions under subsection (k).") Here, the court has no records to examine *in camera* because there is no particular request for a file that was denied for a stated reason. This court cannot evaluate a denial if a denial is not shown.

Plaintiffs' general allegations that files were made available to management, but not to employees, cannot withstand summary judgment, because Plaintiffs have provided no concrete evidence to support these allegations. To the contrary, Kathleen Dix, in her deposition taken on March 23, 1992, stated that she "didn't know of one employee ... who didn't know that there was an unofficial folder in the shop." Dix dep. at 24. She stated further that the employees "would need information out of that folder at least once a year and that it would be supplied." Dix dep at 24–25. If an employee received a letter of reprimand, "he knew that it would be placed in [the unofficial personnel folder] because the original he got, it would say 'copy to' and it said 'shop Personnel Folder.'" Dix dep. at 137. She stated further that all a person had to do to see his or her unofficial personnel file was to make a written request. Dix dep. at 125.

■ Plaintiffs at one point in this litigation claimed they did not know about the existence of the unofficial personnel files and therefore would not know to ask for them. In fact, because of this contention, this litigation has become popularly known among the litigants and the media as the "secret files" litigation. However, as stated earlier, there are several reasons the Plaintiffs should have known about the files (as well as numerous indications that they did know.) First, CNSY followed the notice requirement of the Privacy Act in publishing the existence of the "unofficial personnel files" in the Federal Register. *See* Fed.Reg. Vol. 55, No. 24; Deposition of Charleston Naval Shipyard Chief

Legal Officer Michael L. Geffen at p. 98, ll. 15–21; *see also id.* at p. 72, ll. 20–24 (discussing Navy's authority to maintain such records). Second, CNSY routinely marked original documents, which were returned to the employee, with the annotation "copy to Shop Personnel Folder." Finally, Plaintiffs' union openly negotiated over these very files as far back as 1986. As this court stated in its September 30, 1994 Order in the related case of *Knight et al. v. Department of the Navy*, C/A 2:93–1064–18, at 5 n. 1 (D.S.C. 1994):

> The Labor Management Relations Agreement between Charleston Naval Shipyard and Federal Employees Metal Trades Council of Charleston (the union that represented most if not all of these Plaintiffs) provides that an "employee, upon request, will be permitted to review his/her official personnel records in the Industrial Relations Office, *unofficial personnel records maintained in the shop or group personnel office,* and medical information about the employee in the dispensary in accordance with applicable regulations." (Def.'s Ex. 6, Art. 35) (emphasis added). The Union is comprised of Navy employees; therefore, it seems unreasonable for these long-time Navy employees, especially the ones who were Union stewards, to claim they had no knowledge or reason to know that unofficial personnel records existed.

*Id.*

### V. Conclusion

Despite the formal nature of the procedure for requesting documents and the widespread knowledge that "unofficial personnel files" existed, no Plaintiff has been able to describe a particular incident in which he requested in writing his "unofficial personnel file" and was improperly denied access. Thus, no Plaintiff has proved an access violation under 5 U.S.C. § 552a(d)(1).

It is therefore

**ORDERED** that Defendant's Motion for Summary Judgment be **GRANTED. AND IT IS SO ORDERED.**