**David G. FISHER, Plaintiff,**

v.

**FEDERAL BUREAU OF INVESTIGATION, et al., Defendants.**

**No. Civ. 3:99CV796(PCD).**

United States District Court, D. Connecticut.

March 7, 2000.

David G. Fisher, Stamford, Connecticut, plaintiff pro se.

Heather R. Epstein, U.S. Attorney's Office, New Haven, Connecticut, for defendants, FBI and Office of Information & Privacy.

## RULING ON MOTION TO DISMISS

DORSEY, District Judge.

Plaintiff brought this action against four offices of the federal government under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Privacy Act, 5 U.S.C. § 552a. Jurisdiction is invoked pursuant to 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 552a(g)(1), and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* ("APA"). Plaintiff seeks the production of agency records pertaining to him and to enjoin defendants from conducting any investigative activity in relation to him, his family or his associates. Defendants move to dismiss the FOIA and Privacy Act claims for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(2), and 12(b)(6), respectively.

## I. BACKGROUND

Plaintiff alleges the following facts. In 1996, he applied for a special agent position with the New Haven branch office of the Federal Bureau of Investigation ("FBI–NH"). In 1997, FBI–NH informed him that his application was rejected. Plaintiff alleges that in April, 1998, "numerous [unnamed] associates reluctantly

implied that the Plaintiff was the subject of some type of government investigation" and that "unidentified federal employees have improperly contacted the Plaintiff's associates to keep track of the Plaintiff's activities." Pl.'s Compl., ¶ 17. He further alleges that at some time in October, 1998, and again in November, 1998, he received anonymous phone calls informing him that a federal agency was investigating him. He alleges that defendants still conduct a full field investigation of him. He wrote Attorney General Janet Reno on December 17, 1998, to complain about the alleged investigation and was told on January 6, 1999, that his letter had been distributed by the Department of Justice ("DOJ") to various components of that agency, including the FBI.

Beginning late in 1998, plaintiff requested disclosure from three FBI offices of any records that the FBI maintained on him, pursuant to FOIA and the Privacy Act. Plaintiff first wrote FBI Headquarters ("FBI–HQ") in Washington, D.C., on November 30, 1998, and then clarified his request on December 4, 1998, requesting manual and computerized searches for any records relating to him. FBI–HQ assigned the request number 442240 by a letter date-stamped December 10, 1998.

On January 19, 1999, FBI–HQ attached copies of plaintiff's prior letter to Attorney General Reno and the DOJ distribution letter to a request for him to resubmit his personal identification information so that a search could begin. On January 24, 1999, he questioned the propriety of this letter and appealed FBI–HQ's handling of his FOIA/PA request to the Office of Information and Privacy ("OIP") on January 27, 1999. This appeal remains pending.

On January 28, 1999, and February 4, 1999, FBI–HQ informed plaintiff that processing of his FOIA/PA request was delayed unavoidably. On February 22, 1999, he filed another first-party FOIA/PA request. FBI–HQ acknowledged this request on March 5, 1999, assigning it the same request number as his original request and reminding him that his request was still delayed. FBI–HQ processed the request subsequent to this suit. On November 4, 1999, FBI–HQ released nine pages of responsive material.

Substantially similar exchanges occurred between plaintiff and FBI–NH and the New York FBI office ("FBI–NY"). At first, FBI–NH denied having any documents pertaining to him. In response to a second request, FBI–NH released twenty-one pages of material. FBI–NY informed him after each of two requests that it had no pertinent records. He has appeals pending with OIP against both of these offices as well.

## II. DISCUSSION

### A. Standard for Motion to Dismiss For Lack of Subject Matter Jurisdiction

■ On a motion to dismiss for lack of subject matter jurisdiction, the party asserting jurisdiction bears the burden of alleging "a proper basis for jurisdiction in his pleadings and must support those allegations with 'competent proof' if a party opposing jurisdiction properly challenges those allegations." *Linardos v. Fortuna,* 157 F.3d 945, 947 (2d Cir.1998). Affidavits or other evidence outside the pleadings may be used by either party to challenge or support subject matter jurisdiction. *Antares Aircraft, L.P. v. Federal Republic of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds,* 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992). As a general rule, if a Rule 12(b)(1) motion challenges subject matter jurisdiction facially—i.e., based on the sufficiency of the pleadings—the allegations in the pleadings are taken as true and construed in the most favorable light for the complainant. *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir.1992); *Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1583 (Fed.Cir.1993). However, if the movant denies or controverts the complainant's jurisdictional allegations, the motion is a factual challenge and the allegations of the complainant do not control.

*Cedars–Sinai,* 11 F.3d at 1583; *accord KVOS, Inc. v. Associated Press,* 299 U.S. 269, 277–79, 57 S.Ct. 197, 81 L.Ed. 183 (1936). Thus, a factual challenge to subject matter jurisdiction allows "only uncontroverted factual allegations [to be] accepted as true for purposes of the motion." *Cedars–Sinai,* 11 F.3d at 1583. The district court may engage in fact-finding as to any disputed facts that underpin the jurisdictional allegations, and it may view evidence outside the pleadings to do so. Finally, once the complainant's allegations are disputed factually, the allegations alone are not sufficient to carry the complainant's burden on a motion to dismiss for lack of subject matter jurisdiction. *Id.* at 1584.

### B. *Jurisdiction Under the APA and the Privacy Act*

■ The APA is not "an implied [independent] grant of subject-matter jurisdiction permitting federal judicial review of agency action." *Califano v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *see also Bruzzone v. Hampton,* 433 F.Supp. 92, 95 (S.D.N.Y.1977). The APA cannot support jurisdiction where another statute provides for judicial review in a given situation. *Keen v. Brown,* 958 F.Supp. 70, 76 (D.Conn.1997). Plaintiff must establish subject matter jurisdiction under either FOIA or the Privacy Act.

■ Under the Privacy Act, an individual can sue whenever an agency refuses to comply with an individual's request for disclosure of information pertaining to him or her. *See* 5 U.S.C. § 552a(g)(1).[1] For plaintiff to obtain a civil remedy under the Privacy Act for a violation of his access rights, he must first exhaust administrative remedies. *Biondo v. Department of Navy,* 928 F.Supp. 626, 630 (D.S.C.1995),

*aff'd* 86 F.3d 1148, 1996 WL 279001 (4th Cir.1996). This requirement "allow[s] the agency the opportunity to exercise its expertise and develop a record for review ... [and to] correct misunderstandings or errors, [while saving the court] a considerable expenditure of time." *Biondo,* 928 F.Supp. at 631. Once plaintiff exhausts administrative remedies under the Privacy Act, he must then show "(1) that a request for records was made; (2) that the request was denied; and (3) that such a denial or failure to act was improper under the Privacy Act." *Id.*

The Privacy Act limits relief to "enjoin[ing] the agency from withholding the records and order[ing] the production to the complainant of any agency records improperly withheld from him." 5 U.S.C. § 552a(g)(3)(A). In a case involving access rights, when "the requested documents have been produced, the claim for relief ... becomes moot." *Biondo,* 928 F.Supp. at 631. This is true whether the litigation has already begun, as in *DeBold v. Stimson,* 735 F.2d 1037, 1040 (7th Cir.1984), or if the requested documents are simply delivered late, as in *Lovell v. Alderete,* 630 F.2d 428, 430 (5th Cir.1980).

■ Assuming plaintiff has exhausted his administrative remedies under the Privacy Act, he alleges no facts which establish a denial of his requests or agency impropriety in the handling of those requests. Plaintiff was provided a total of thirty pages of material. The fact that the records came after some delay is not necessarily tantamount to an improper denial of the records; rather, it is an unfortunate consequence of the kind of repetitious requests made by plaintiff and numerous others who seek access to records which, in fact, may not actually exist. As a result,

---

1. "Jurisdictional requirements vary depending on which provision of the [Privacy] Act" plaintiff has invoked. *Clarkson v. I.R.S.,* 678 F.2d 1368, 1375 n. 11 (11th Cir.1982). Plaintiff failed to specify under which subsection of 5 U.S.C. § 552a(g)(1) he brings this action. It is assumed that plaintiff invokes jurisdiction under (g)(1)(B), because he has not explicitly

alleged an adverse effect of the agencies' actions against him pursuant to 5 U.S.C. § 552a(g)(1)(D), and because subsections (g)(1)(A) and (C) do not apply to his allegations. Moreover, he seeks remedies under 5 U.S.C. § 552a(g)(3)(A), a subsection referring explicitly to claims brought under (g)(1)(B).

plaintiff fails to establish jurisdiction under the Privacy Act.

### C. *Jurisdiction Under FOIA*

Under FOIA, any person may request any records from an agency, so long as they reasonably describe them and comply with other terms of the statute. 5 U.S.C. § 552(a)(3). An agency must determine whether to comply with the request within ten working days of its receipt and notify the requester of its decision and the existence of any appeals procedure in the event of an adverse determination. 5 U.S.C. § 552(a)(6)(A); *see Freeman v. United States Dep't of Justice (Fed. Bureau of Investigation)*, 822 F.Supp. 1064, 1065 (S.D.N.Y.1993). Under "unusual circumstances" the time limit for dealing with a request can be extended, but not for longer than ten additional working days. 5 U.S.C. § 552(a)(6)(B). Should the agency fail to act within the time limits provided by FOIA, a requester is deemed to have exhausted his administrative remedies, which opens the door for suit in federal court. 5 U.S.C. § 552(a)(6)(C).

The Act "grants the district courts discretion to allow an agency additional time upon a government showing of 'exceptional circumstances' and 'due diligence.'" *Ferguson v. Fed. Bureau of Investigation*, 722 F.Supp. 1137, 1140 (S.D.N.Y.1989). "Exceptional circumstances" occur when an agency is "deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits ... and when the agency can show [due diligence] in processing the requests." *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C.Cir.1976). Agencies achieve "due diligence" by complying with "all lawful demands under [FOIA] in as short a time as is possible by assigning all requests on a first-in, first-out basis, except those where exceptional need or urgency is shown." *Id.* With or without an extension of time, once the requester receives the requested documents, "the claim for relief

under FOIA becomes moot." *DeBold*, 735 F.2d at 1040.

 To maintain jurisdiction under FOIA plaintiff must show that an agency has (1) improperly; (2) withheld; (3) agency records. *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980). It is improper for an agency to refuse to produce records that do not fall within one of the nine exemptions created by FOIA. *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989). Agency records are materials created or obtained by an agency and maintained under legitimate agency control at the time the FOIA request is made. *Tax Analysts*, 492 U.S. at 144–45, 109 S.Ct. 2841. However, agency records do not encompass every piece of material "physically located at the agency." *Tax Analysts*, 492 U.S. at 145, 109 S.Ct. 2841. The burden of proof initially rests with the agency to show that it has met this standard. *Tax Analysts*, 492 U.S. at 142 n. 3, 109 S.Ct. 2841. If each criteria of the test for a FOIA violation is not met, "a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements." *Katzman v. Central Intelligence Agency*, 903 F.Supp. 434, 436 (E.D.N.Y.1995) (quoting *Tax Analysts*, 492 U.S. at 142, 109 S.Ct. 2841). Plaintiff alleges that defendants effectively denied his FOIA/PA requests by failing to comply within statutory time limits and failing to provide all requested agency records. Defendants submit that all records pertaining to plaintiff have been released, save for a small amount of personal data relating to agency personnel which is justified under the invasion of privacy exemption. *See* 5 U.S.C. § 552(b)(7)(C).

While delay may effectively deny a request, courts often grant at least some time extension for equitable reasons "when presented with evidence of an overburdened agency following necessary procedures." *Ferguson*, 722 F.Supp. at 1140.

Defendants' pleadings and three affidavits controvert plaintiff's bare allegations that the agency has delayed indefinitely and thus improperly withheld documents.[2] Defendants did not refuse to provide records to plaintiff, but on several occasions informed him that they would process his request in its turn and that a substantial backlog would delay that review. Defendants' affidavits detail the handling of the requests, the nature of such searches, and the exceptional problems defendants have with backlog due to time and budget constraints. Therefore, defendants sufficiently met their initial burden.

■ "Should a court find that the agency has sustained its burden of demonstrating that it conducted a reasonable search … the burden shifts to the plaintiff to make a showing of agency bad faith sufficient to impugn the agency's affidavits." *Katzman,* 903 F.Supp. at 437. Defendants produced a majority of the records before litigation began, and have since completed their review of the remaining records and released those to plaintiff. Plaintiff has not established bad faith by defendants. His case is dismissed in full for lack of subject matter jurisdiction or, in the alternative, for mootness as he has been provided all documents necessary to satisfy his FOIA/PA requests.[3]

### III. *Conclusion*

Accordingly, defendants' motion to dismiss [Doc. No. 13] is granted. Plaintiff's motion for discovery [Doc. No. 25] is de-

---

**2.** Plaintiff argued that each agency employee supervising the search must supply an affidavit. "On an agency's motion for summary judgment … an affidavit from an agency employee responsible for supervising a FOIA search is all that is needed…. [T]here is no need for the agency to supply affidavits from each individual who participated in the actual search." *Katzman,* 903 F.Supp. at 438. Agency affidavits must detail files searched and the general scheme of the agency file system. *Id.* Due to the discretion in viewing material outside of the pleadings, the defendants' affidavits are sufficient for the motion for lack of subject matter jurisdiction.

nied as moot. The clerk shall close the file.

SO ORDERED.

---

**3.** This dispute apparently arises in part from a misunderstanding of the system by which records are kept by the FBI. Defendants indicate that any number of documents may be located in the same overriding file, but that these subfiles are not necessarily related except in the most general sense. Plaintiff is not entitled to files or subfiles unless they specifically relate to him. Plaintiff has been provided with all relevant materials and, despite the understandable dismay at the delay, his case is therefore moot.